UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| **JOHN CAPANNARI**<br>**2570 Villa Lane**<br>**Cincinnati, OH 45208** | : | **Case No.:** `1:13-cv-883` |
| | : | **Judge:** `Dlott` |
| **and** | : | |
| | : | |
| **JOHN A. ANDERSON**<br>**11150 Maple Knoll Terrace**<br>**Cincinnati, OH 45246** | : | |
| | : | **CLASS ACTION COMPLAINT FOR** |
| | : | **VIOLATIONS OF FEDERAL** |
| **Plaintiffs,** | : | **SECURITIES LAWS AND** |
| | : | **DAMAGES** |
| **vs.** | : | |
| | : | **JURY TRIAL DEMANDED** |
| **GLEN GALEMMO**<br>**1849 Madison Rd.**<br>**Cincinnati, OH 45206,** | : | |
| | : | |
| **and** | : | |
| | : | |
| **QUEEN CITY INVESTMENT**<br>**FUND II, LLC,**<br>**1716 Madison Rd.**<br>**Cincinnati, OH 45208** | : | |
| | : | |
| **Serve Statutory Agent:**<br>**Edward C. Blackledge**<br>**8375 Barret Rd.**<br>**West Chester, OH 45069** | : | |
| **and** | : | |
| | : | |
| **QUEEN CITY ADVISORS, LLC**<br>**1716 Madison Rd.**<br>**Cincinnati, OH 45208** | : | |
| | : | |
| **Serve Statutory Agent:**<br>**Kristine Galemmo**<br>**1716 Madison Rd.**<br>**Cincinnati, OH 45208** | : | |
| | : | |

and                                          :
                                             :
**GALEMMO INVESTMENT GROUP**                 :
1849 Madison Rd.                             :
Cincinnati, OH 45206,                        :
                                             :
and                                          :
                                             :
**QUEEN CITY INVESTMENT FUNDS**              :
1849 Madison Rd.                             :
Cincinnati, OH 45206,                        :
                                             :
and                                          :
                                             :
**QUEEN CITY INVESTMENTS**                   :
1849 Madison Rd.                             :
Cincinnati, OH 45206,                        :
                                             :
and                                          :
                                             :
**QUEEN CITY HEDGE FUND**                    :
1849 Madison Rd.                             :
Cincinnati, OH 45206,                        :
                                             :
and                                          :
                                             :
**QC POWER STRATEGIES FUND II,**             :
**LLC,**                                     :
2230 Park Ave.                               :
Cincinnati, OH 45206                         :
                                             :
    <u>Serve Statutory Agent:</u>  :
    **Glen Galemmo**              :
    1716 Madison Rd.             :
    Cincinnati, OH 45208         :
                                             :
and                                          :
                                             :
**QC POWER STRATEGIES FUND**                 :
**SWEEP ACCOUNT, LLC,**                      :
2230 Park Ave.                               :
Cincinnati, OH 45206                         :

       **Serve Statutory Agent:**        :
       **Glen Galemmo**             :
       **1716 Madison Rd.**         :
       **Cincinnati, OH 45208**     :
                                        :

**and**                                         :
                                        :

**QC POWER STRATEGIES FUND,**   :
**LLC,**                                      :
**2230 Park Ave.**                   :
**Cincinnati, OH 45206**        :
                                        :

       **Serve Statutory Agent:**        :
       **Glen Galemmo**             :
       **1716 Madison Rd.**         :
       **Cincinnati, OH 45208**     :
                                        :

**and**                                         :
                                        :

**SENTINEL PROPERTY HOLDINGS,**   :
**LLC,**                                      :
**2230 Park Ave.**                   :
**Cincinnati, OH 45206**        :
                                        :

       **Serve Statutory Agent:**        :
       **Glen Galemmo**             :
       **1716 Madison Rd.**         :
       **Cincinnati, OH 45208**     :
                                        :

**and**                                         :
                                        :

**GLEN ROCK, LLC**             :
**2230 Park Ave.**                   :
**Cincinnati, OH 45206**        :
                                        :

       **Serve Statutory Agent:**        :
       **Glen Galemmo**             :
       **1716 Madison Rd.**         :
       **Cincinnati, OH 45208**     :
                                        :

**and**                                         :
                                        :

**SENTINEL STRATEGY FUND, LLC**   :
**2230 Park Ave.**                   :
**Cincinnati, OH 45206**        :
                                        :

       <u>**Serve Statutory Agent:**</u>      :
       **Glen Galemmo**       :
       **1716 Madison Rd.**       :
       **Cincinnati, OH 45208**       :
       :

**and**       :
       :

**QFC, LLC**       :
**2230 Park Ave.**       :
**Cincinnati, OH 45206**       :
       :

       <u>**Serve Statutory Agent:**</u>      :
       **Glen Galemmo**       :
       **1716 Madison Rd.**       :
       **Cincinnati, OH 45208**       :
       :

**and**       :
       :

**MIDWEST HOOPS AT SPORTSPLUS,**       :
**LLC,**
**2230 Park Ave.**       :
**Cincinnati, OH 45206**       :
       :

       <u>**Serve Statutory Agent:**</u>      :
       **Glen Galemmo**       :
       **1716 Madison Rd.**       :
       **Cincinnati, OH 45208**       :
       :

**and**       :
       :

**CINCINNATI ROYALS, INC.**       :
**2230 Park Ave.**       :
**Cincinnati, OH 45206**       :
       :

       <u>**Serve Statutory Agent:**</u>      :
       **Glen Galemmo**       :
       **1716 Madison Rd.**       :
       **Cincinnati, OH 45208**       :
       :

**and**       :
       :

**QUEEN CITY HEDGE FUND LLC**       :
**1849 Madison Rd.**       :
**Cincinnati, OH 45206,**       :
       :

**and**       :

4

RUGGED POWER MANAGEMENT                    :
LLC                                        :
6824 Ashfield Drive                        :
Cincinnati, OH  45242                      :
                                           :
     **Serve Statory Agent:**     :
     KMK Service Corporation      :
     1 East 4th Street, Suite 1400 :
     Cincinnati, OH  45202        :
                                           :
and                                        :
                                           :
RUGGED POWER INVESTMENTS                    :
LLC                                        :
6824 Ashfield Drive                        :
Cincinnati, OH  45242                      :
                                           :
     **Serve Statory Agent:**     :
     KMK Service Corporation      :
     1 East 4th Street, Suite 1400 :
     Cincinnati, OH  45202        :
                                           :
and                                        :
                                           :
PSIF LLC                                   :
1849 Madison Rd.                           :
Cincinnati, OH  45206                      :
                                           :
and                                        :
                                           :
W. BERNARD KYLES & CO., INC.               :
1077 Celestial Building #3, Suite 201      :
Cincinnati, OH  45202                      :
                                           :
     **Serve Statutory Agent:**   :
     Wiley B. Kyles               :
     9352 Main Street             :
     Montgomery, OH  45242        :
                                           :
and                                        :
                                           :
WILEY B. KYLES                             :
1077 Celestial Building #3, Suite 201      :
Cincinnati, OH  45202                      :
                                           :
and                                        :

5

CHARLES G. SIMON, CPA        :
5942 Pepperhill Road          :
Charlotte, NC 28212          :
                                   :
        **Defendants.**        :

Plaintiffs John Capannari ("Capannari") and John Anderson ("Anderson") (together "Plaintiffs"), for their Complaint against Defendants Glen Galemmo ("Galemmo"), Queen City Investment Fund II, LLC, Queen City Advisors, LLC, Galemmo Investment Group, Queen City Investment Funds, Queen City Investments, Queen City Hedge Fund, AC Power Strategies Fund II, LLC, QC Power Strategies Fund Sweep Account, LLC, QC Power Strategies Fund, LLC, Sentinel Property Holdings, LLC, Glen Rock, LLC, Sentinel Strategy Fund, LLC, QFC, LLC, Midwest Hoops at SportsPlus, LLC, Midwest Hoops Sports Complex, LLC and Cincinnati Royals, Inc. (the "Galemmo Entities"), Rugged Power Management LLC, Rugged Power Investments LLC, PSIF LLC, W. Bernard Kyles & Co., Inc. and Wiley B. Kyles (the "Kyles Defendants"), and Charles G. Simon, (collectively "Accountant Defendants") state as follows:

## INTRODUCTION

1.     This class action is brought on behalf of approximately 200 investors who were fraudulently and unlawfully induced by the Defendants to invest over $50,000,000 of their money from pension plans, IRAs, retirement accounts and other personal investment accounts in one of the largest Ponzi schemes in the history of Hamilton County, Ohio. Plaintiffs and Class members principally purchased membership interests in Queen City Investment Fund II, LLC ("Fund II"), an Ohio limited liability company purportedly formed by Defendant Galemmo as an investment fund to achieve capital appreciation by investing in stocks, bonds and other types of securities. In some cases, the Class members were induced to purchase "special deal" debt or

equity securities that were fictional devices to get money into the Queen City funds and other affiliated Galemmo Entities and into the Defendants' pocket. Defendants repeatedly and falsely assured investors that their money was safely invested. Instead, however, Defendants, in violation of the securities laws of the United States, used the assets "invested" as their own personal "cookie jar," withdrawing whatever they personally needed without disclosure to the Class. In fact, there is no accurate account of the use or whereabouts of the over $50,000,000 invested by Plaintiffs and Class members.

Shockingly, on July 17, 2013 at 7:31 a.m., Plaintiffs and Class members, without prior warning, received an e-mail from Defendant Galemmo announcing that as of that date: "Queen City Investments will no longer be in operation." Galemmo further advised that he had been instructed by counsel not to speak or interact with any "clients" and directed them to a Special Agent with the Internal Revenue Service ("IRS").

It is now apparent that the Defendants lied to investors and regulatory agencies about, among other things: (i) Fund II's investment strategies; (ii) Fund II's investment performance; (iii) Fund II's size and value; (iv) the value of each individual non-managing member's interest in Fund II; (v) the "fictional" special deals; and (vi) where and how investor monies were invested or held.

As a result of Defendants' violations of the federal securities laws designed to protect investors, Fund II and the affiliated Galemmo Entities are shut down; Galemmo has disappeared; Fund II's offices have gone dark; and investor money whether in a "Fund" or a "special deal" remains unaccounted for and is most likely lost. This case seeks to right those wrongs.

## JURISDICTION AND VENUE

2.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1337, Section 22 of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. § 77v, and Section 27 of the Securities Exchange Act ("Exchange Act").

3.      The claims asserted herein arise under Sections 11 and 15 of the Securities Act, 15 U.S.C. §§ 77k and 77o, and Sections 10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§ 78j(b) and 78t(a), and SEC Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5.

4.      In connection with the acts, conduct, and other wrongs alleged in this Complaint, the Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

5.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b), (c) and (d) because the Galemmo Defendants maintained executive offices in this district during the relevant time period, and many of the alleged acts, transactions, and conduct constituting violations of law occurred in this district.

## PARTIES

6.      Plaintiff John Capannari is a resident of Hamilton County, Ohio and was, at all times relevant, an investor in Fund II.  Attached as Exhibit A hereto is Capannari's Certification.

7.      Plaintiff John A. Anderson is a resident of Hamilton County, Ohio and was, at all times relevant, an investor in Fund II.  Attached as Exhibit B hereto is Anderson's Certification.

8

8.     Upon information and belief, Defendant Glen Galemmo ("Galemmo") currently resides in North Carolina, but at all times relevant resided in Ohio and was the managing member of Fund II.

9.     Defendant Fund II is an Ohio limited liability company formed on or about August 14, 2000, and has its principal place of business in Hamilton County, Ohio.

10.    Defendant Queen City Advisors, LLC, is an Ohio limited liability company formed on or about December 26, 2006 by Galemmo's wife and had its principal place of business in Hamilton County, Ohio.  Upon information and belief, Galemmo was the managing member of Queen City Advisors, LLC, which was the managing member of Fund II.

11.    Defendant Queen City Investment Funds, upon information and belief, is an unincorporated organization under which Defendant Galemmo transacted business in Hamilton County, Ohio.

12.    Defendant Queen City Hedge Fund LLC, upon information and belief, is an unincorporated organization under which Defendant Galemmo transacted business in Hamilton County, Ohio.  Queen City Hedge Fund LLC distributed information about Fund II.

13.    Defendant QC Power Strategies Fund II, LLC, is an Ohio limited liability company formed on or about May 1, 2013, and which transacts business in Hamilton County, Ohio.

14.    Defendant QC Power Strategies Fund Sweep Account, LLC, is an Ohio limited liability company formed on or about February 13, 2013, and which transacts business in Hamilton County, Ohio.

15.    Defendant QC Power Strategies Fund, LLC, is an Ohio limited liability company formed on or about September 21, 2012, and which transacts business in Hamilton County, Ohio.

9

16.    Defendant Sentinel Property Holdings, LLC, is an Ohio limited liability company formed on or about August 13, 2012, and which transacts business in Hamilton County, Ohio.

17.    Defendant Glen Rock, LLC, is an Ohio limited liability company formed on or about July 6, 2012, and which transacts business in Hamilton County, Ohio.

18.    Defendant Sentinel Strategy Fund, LLC, is an Ohio limited liability company formed on or about June 25, 2012, and which transacts business in Hamilton County, Ohio.

19.    Defendant QFC, LLC, is an Ohio limited liability company formed on or about February 18, 2010, and which transacts business in Hamilton County, Ohio

20.    Defendant Midwest Hoops at SportsPlus, LLC, is an Ohio limited liability company formed on or about October 8, 2008, and which transacts business in Hamilton County, Ohio.

21.    Defendant Cincinnati Royals, Inc. is an Ohio for-profit corporation incorporated on October 3, 2008, and which transacts business in Hamilton County, Ohio.

22.    Rugged Power Management, LLC is an Ohio for-profit corporation incorporated on May 13, 2013, and which transacts business in Hamilton County, Ohio.

23.    Rugged Power Investments, LLC is an Ohio for-profit corporation incorporated on May 9, 2013, and which transacts business in Hamilton County, Ohio.

24.    PSIF, LLC, upon information and belief, is an unincorporated organization under which Defendant Galemmo transacts business in Hamilton County, Ohio.

25.    Defendant W. Bernard Kyles & Co., Inc. ("Kyles Inc.") is an Ohio corporation which has its principal place of business in Hamilton County, Ohio.  Defendant Wiley B. Kyles is the statutory agent of Kyles Inc.  Kyles, Inc. provided accounting services to Fund II and the

Galemmo Defendants and prepared the fictitious monthly account statements distributed to Class members.

26.     Defendant Wiley B. Kyles ("Kyles") is a natural person and resident of Hamilton County, Ohio.  Kyles, upon information and belief, is the authorized agent and operator of Kyles Inc.  (together Kyles and Kyles Inc are referred to as "the Kyles Defendants").

27.     Defendant Charles G. Simon ("Simon") is a certified public accountant and is a resident of North Carolina.  Simon prepared the fictitious Fund II Schedule K-1s distributed to each investor of Fund II.

## CLASS ACTION ALLEGATIONS

28.     Plaintiffs incorporate by reference the allegations contained in Paragraphs 1- 27 as if fully restated herein.

29.     Plaintiffs bring this action as a class action pursuant to Rule 23 of the Federal Rule of Civil Procedure on behalf of a Class of all persons and entities who purchased non-managing membership interests either directly or through a "special deal" investment in Fund II or an affiliated Galemmo Entity between January 1, 2002 and July 17, 2013, inclusive (the "Class Period") and were damaged thereby.  Excluded from the Class are all Defendants, members of the immediate family of each of the Defendants, any entity in which any Defendant has a controlling interest, and the legal representatives, heirs, successors, predecessors in interest, affiliates or assigns of any Defendant.

30.     The Class is so numerous that joinder of all Class members is impracticable. While the exact number of Class members is unknown it is estimated that there are approximately 150 to 200 putative Class members throughout the United States.

31.     Plaintiffs' claims are typical of the claims of the members of the Class, since all members of the Class purchased securities directly or indirectly through special deals of Fund II or an affiliated Galemmo Entity during the Class Period and sustained damages arising out of the Defendants' wrongful conduct in violation of the federal securities laws as alleged herein.

32.     Plaintiffs will fairly and adequately protect the interests of the members of the Class. Plaintiffs have retained counsel competent and experienced in federal class action securities fraud litigation and Plaintiffs have no interests antagonistic to or in conflict with the other members of the Class.

33.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Joinder of all Class members is impracticable. The likelihood of individual Class members prosecuting separate claims is remote. Since the damages suffered by individual Class members may be relatively small, the expense and burden of litigation makes it impossible for Class members individually to seek redress for the wrongs done to them. It is desirable for all concerned to concentrate this litigation in this forum. No unusual difficulties are likely to be encountered in the management of this Class action.

34.     Questions of law and fact common to the members of the Class predominate over questions affecting any individual Class member. These common questions of law and fact include, among others, the following:

a.      Whether the Defendants' misrepresentations and omissions, as alleged herein, violated federal securities laws;

b.      Whether the Defendants' misrepresentations and omissions, as alleged herein, misrepresented material facts about the quality of Fund II membership interests and "special deals" during the Class period;

c.      Whether the Defendants' misrepresentations and omissions, as alleged herein, caused Class members to suffer a compensable

12

loss;

d.    Whether Class members have sustained damages and, if so, the proper measure thereof.

e.    Whether the Defendants made materially false and misleading statements with knowledge of their falsity;

f.    Whether Class members' reliance on such statements and representations was justifiable;

g.    Whether Class members were damaged as result; and

h.    Whether Defendants were unjustly enriched at the expense of Class members.

## FACTS RELEVANT TO ALL CLAIMS

### *Setting the Stage for the Ponzi Scheme*

35.    Plaintiffs incorporate by reference the allegations contained in Paragraphs 1- 34 as if fully restated herein.

36.    On or about August 14, 2001, a business associate of Galemmo formed Power Hedge I, LLC, pursuant to Section 1705.04 of the Ohio Revised Code.

37.    On or about November 13, 2001, Galemmo Investment Group caused the name of Power Hedge I, LLC to be changed to Queen City Hedge Fund II, LLC.

38.    On or about March 1, 2002, Queen City Hedge Fund II, LLC changed its name to Queen City Investment Fund II, LLC ("Fund II").

### *Hooking Investors*

39.    On or about January 1, 2002, Galemmo, Fund II, and Queen City Advisors, LLC, published a private offering memorandum by which they intended to, and did, sell purported non-managing membership interests in Fund II ("2002 Offering Memorandum") to Plaintiffs and

13

Class members. The 2002 Offering Memorandum was distributed to potential investors continuously until early 2012.

40. The stated purpose of Fund II was to operate as an investment company, raising capital through the sale of non-managing membership interests, and thereafter "to seek substantial capital appreciation" through investing and trading the capital in equities, options and other securities and instruments.

41. The 2002 Offering Memorandum falsely represented that Queen City Advisors, LLC was the managing member of Fund II, and that it was "a Delaware Limited Liability Company organized in August 2000." This was not true. According to the Delaware Secretary of State, Queen City Advisors, LLC was not in fact incorporated in Delaware until 2012. And, according to the Ohio Secretary of State, the Ohio entity formed by Galemmo's wife named "Queen City Advisors, LLC" was not organized until 2006. There is no doubt, however, that Galemmo controlled Queen City Advisors, LLC and received all benefits from Queen City Advisors, LLC acting as the managing member of Fund II.

42. The 2002 Offering Memorandum described specific restrictions and limitations on the nature and scope of permitted investments by Fund II. These statements were false and misrepresented the true nature of the investments actually being made. These restrictions and limitations falsely stated, among other things, the following:

    a.    "The Company will not invest directly in real estate . . . ." In fact, without disclosure to Plaintiff and Class members, Defendants used Fund II assets, "special deal" funds and funds collected by affiliated Galemmo Entities for direct investments in real estate. In a letter to the "Friends of the Fund" in early 2013, Defendants finally admitted that Fund II had used Fund II assets to purchase a building to house a "growing investment and operations team and ...to upgrade the working space, technology and client interaction space in Cincinnati." On information and belief, Fund II has received no rental or other payment for use of the offices by the

14

Management team;

b. "Selection is based primarily utilizing technical and charting tools to assess supply–demand relationships in the context of the general market." In fact, Fund II invested in "start-up" companies where it was impossible to use such "technical and charting tools;"

c. The 2002 Offering Memorandum falsely states that Fund II was exempt from registration under the Securities Act of 1933 because it met the requirements of Regulation D and Rule 506. A Regulation D exemption requires that the offering be limited to "accredited investors." In fact, Fund II was open to any and all investors, including Plaintiff Capannari who invested his family's entire retirement account and life savings in Fund II.

d. "It [Fund II] is not intended as a complete investment program and is designed only for investors who have adequate means of providing for their needs and contingencies without relying on distributions or withdrawals from their accounts, who are financially able to maintain their investment and who can afford the loss of their investment." In fact, ignoring this admission that the investment was totally unsuitable to certain members of the Class, Defendants eagerly solicited all of the money and investments that many members of the Class owned, contradicting the written unsuitability warning with oral assurances that the investments were safe and suitable for everyone;

e. The 2002 Offering Memorandum falsely stated Galemmo's relevant employment history, describing only Galemmo's positions with R.H. York Investment Brokers and Olde Discount Corp, two registered broker-dealers. The 2002 Offering Memorandum failed to disclose the inexplicable and rapid movement of Galemmo's broker license from broker to broker to broker. In fact, Galemmo moved his license 9 times in 12 years from 1995 to 2007. Nor did the 2002 Offering Memorandum disclose that from January 1997 to March 2002, Galemmo's length of employment with broker dealers was 8 months, 2 months, 4 months, 2 months, and 10 months respectively;

f. The 2002 Offering Memorandum falsely stated that Defendant Galemmo was employed as a registered representative with Queen City Investment Funds, Inc., an "affiliated registered broker-dealer". In fact, Defendant Galemmo was not so registered and had never been employed by such company, according to Galemmo's own filings with FINRA (successor to the National Association of Securities Dealers) and the regulator of brokers and dealers;

15

g.    The 2002 Offering Memorandum falsely stated that at the end of each fiscal year, investors would receive "an audited financial report of the Company, certified by the Company's independent auditor." In fact, investors never received any audited financial reports.

h.    The 2002 Offering Memoranda omitted the fact that Fund II did not and would not comply with the tax laws of the United States;

43.    To be eligible for an exemption from registration under the Securities Act of 1933, non-managing membership interests in Fund II were required to be limited to "accredited investors" as defined by Rule 501 of SEC Regulation D.

44.    Fund II's initial and only Form D filing with the SEC, dated July 29, 2002, specifically states that Fund II had not sold and did not intend to sell interests to non-accredited investors. That representation was false.

45.    Fund II, and Queen City Advisors, LLC sold membership interests in Fund II to investors that were not "accredited investors," as defined and used in Rule 501 of SEC Regulation D.

46.    The 2002 Offering Memorandum attached a copy of the Operating Agreement for Fund II ("Operating Agreement"), which thus was incorporated as part of the Offering Memorandum. The Operating Agreement stated that "[p]roper books of account shall be kept under the accrual method of accounting, and there shall be entered therein all transactions, matters and things relating to the Company's business as are required, and in accordance with generally accepted accounting principles." No such books exist.

47.    The Operating Agreement falsely stated that Fund II had books of account and accounting policies that would accurately account for the financial position of Fund II, the amount and location of Fund II funds, the size and characteristic of each individual investor's

accounts, and the allocation of gains, losses, dividends and interest among the individual investors in accordance with Generally Accepted Accounting Principles;

48.    As accountant to Fund II, the Kyles Defendants were responsible for auditing accurate books of account reflecting the financial position of Fund II, the amount and location of Fund II funds, the size and character of each individual investor's account, and the allocation of gains, losses and dividends among individual investors in accordance with generally accepted accounting principles.  These accurate books of account were to be used in preparing accurate monthly statements distributed to Class members.  The Kyles Defendants knew that no such books and records existed and recklessly proceeded to facilitate the fraud.

49.    In fact the Kyles Defendants corresponded directly with investors, providing them with year-end balances and withdrawals, as well as private placement investment direction forms.  The Kyles Defendants knew that such statements were false.

50.    Among other things, the Kyles Defendants reviewed and filed tax documents, building expenses, calculated payroll and moneys due to independent contractors.  The Kyles Defendants entered investor checks into the general ledger, received Fund II bank statements and prepared the general ledger, knowing that the entries were false.

51.    The Kyles Defendants also prepared false financial documents for affiliated Galemmo Entities and prepared false tax returns for the affiliated Galemmo Entities.

52.    The Kyles Defendants researched foreign Cayman Island investments on behalf of Galemmo, Fund II and the affiliated Galemmo Entities, knowing that the purpose was to place Galemmo assets outside of the United States.

53.    In or about January 2003, Galemmo, Fund II, and Queen City Advisors, LLC published a "Confidential Business Overview" for Fund II, which was provided to many Class

members together with the 2002 Confidential Offering Memorandum to induce more investments. The stated purpose of the Confidential Business Overview was to familiarize the investment community with the fictional business strategy and operations of Fund II.

54.     The Confidential Business Overview falsely stated that the "Number 1 priority" of Fund II was the preservation of capital, further falsely stating that Fund II was "risk averse" with an emphasis on consistent, but moderate returns.

55.     The Confidential Business Overview falsely listed as "Audit Firm" for Fund II Spicer Jeffries LLP. This is an untrue statement. Spicer Jeffries LLP never performed an audit of Fund II financial records.

56.     Galemmo's 2012 letter to "Friends of the Fund" invited and incentivized investors to recommend Fund II to friends, family and colleagues. The letter informed "Friends" that the management team would be opening a new fund and urged investment in it. Some investors were paid commissions if a "friend" invested.

57.     On or about January 1, 2012, Galemmo, Fund II, and Queen City Advisors, LLC published another offering memorandum for Fund II ("2012 Offering Memorandum"). The 2012 Offering Memorandum and the 2002 Offering Memorandum are identical in all material respects and therefore, the 2012 Offering Memorandum contained the same material misrepresentations as the 2002 Offering Memorandum. Included was a false statement that Galemmo managed a fund that averaged 26% annual returns over an eight year period, including the 2000 and 2008 major market decline.

58.     In connection with the fraudulent scheme, Fund II also distributed a Queen City Investment Fund II Return Analysis to nonmanaging members comparing its returns between

18

2003 and 2012 with the S&P 500 returns. The Analysis falsely showed an average annual rate of return of 22% for Fund II during that annual ten year period.

### Harm to Investors from Ponzi Scheme

59.     Galemmo used Queen City Hedge Fund LLC to accept deposits from Class members for purported Fund II and "special deal" investments.

60.     Between January 1, 2002 and January 1, 2012, Galemmo represented to prospective investors of Fund II that he had sold over $300,000,000 of these securities as interests in Fund II.

61.     Galemmo used all or some of funds he received from the moneys paid by the investors for his personal benefit, and not for the purposes for which Galemmo, Fund II or Queen City Advisors, LLC had represented in the 2002 and 2012 Offering Memoranda or any of the "special deals."

62.     Galemmo used the affiliated Gelammo Entities to siphon investor moneys from Fund II. For example, Galemmo signed a check for more than $100,000 from Fund II to PSIF LLC, an unincorporated shell organization under Galemmo's control.

63.     As part of the fraudulent scheme, Galemmo offered a series of "special loans" investments yielding extraordinary interest rates, "special opportunities for investing in software companies", in debt instruments by national brokerage firms and other investments in LLC memberships in other vehicles, that could make investments in stocks, bonds and other types of securities. These became known as "specials deals." In reality, these were merely another component of the Defendants' special deals for investment in affiliated Galemmo Entities.

64.     Instead of refunding these special deals funds, the Defendants urged that those "proceeds" be invested in Fund II.

65.     As part of Defendants' continuing efforts to mislead the investors, Galemmo caused the issuance and mailing of monthly statements to Class members from "Queen City Investment Funds", an entity that did not exist.

66.     The monthly account statements, prepared by the Kyles Defendants and distributed to Class members, falsely stated the value of investments and showed false performance charts for dividends paid.  By preparing these false portfolio statements for Plaintiffs and Class members, the Kyles Defendants violated federal securities laws.

67.     The monthly statements failed to disclose where each Investor's money was invested, how it was invested, the interest held by the Investor, or any detail as to any trading activity undertaken by the Galemmo Defendants during the period for which the statement related.

68.     In addition, Galemmo prepared and distributed false portfolio statements purportedly from Goldman Sachs (a national investment banking and securities firm), showing a portfolio owned by the Galemmo Entities with a market value in excess of $33,000,000 in cash and cash equivalents, a fixed income value in excess of $24,000,000 and a total portfolio value in excess of $100,000,000.  In fact, the Galemmo Entities never had an account with Goldman Sachs.

69.     Galemmo engaged Defendant Simon annually to prepare and participate in the distribution of false Schedule K-1s to the investors.  In fact, Defendant Simon knew these K-1s were false as he had no credible financial information to rely on in preparing these tax filings. Rather, Defendant Simon prepared these false K-1s based on the unaudited, selfserving, vague

monthly financial statements prepared by Kyles Inc. Defendant Simon knew these false forms would be used by the investor in their United States tax returns. Fund II then distributed these Schedule K-1s to Plaintiffs and Class members and personal income taxes were incorrectly paid on these false K-1s.

70. The Kyles Defendants and Simon knowingly, willingly, and intentionally participated in the fraud by preparing and supplying materially false information to Plaintiffs and Class members.

71. Plaintiffs and members of the Class have been damaged by Defendants' violations of federal securities laws and are believed to have lost all or a substantial amount of their investments in Fund II, the special deals and the Affiliated Galemmo Entities and that amount is believed to be many millions of dollars.

## CLAIM FOR RELIEF

### FIRST CLAIM FOR RELIEF
### For Violations of Section 10(b) of the Exchange Act and Rule 10b-5

72. Plaintiffs incorporate by reference the allegations contained in Paragraphs 1 – 71 as if fully restated herein.

73. During the class period, Defendants, directly and indirectly, by the use of means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a scheme and a continuous course of conduct to make materially false and misleading statements about the Galemmo phantom investment dealings, financial condition and operations and to conceal adverse material information about these investments.

74. Defendants employed devices, schemes, and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and

courses of conduct, as alleged herein, including the following: (1) making or participating in the making of untrue statements of material facts; (2) omitting to state the material facts necessary to make the statements about the investments not misleading; and (e) engaging in transactions, practices, and a course of business which operated as a fraud and deceit upon investors during the Class Period.

75.     Defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them.   Such misrepresentations and/or omissions were done knowingly or recklessly for the purpose and effect of concealing the true information about the investments, including their financial condition and operations.

76.     Defendants received information reflecting the true facts regarding the investment and Galemmo's business practices, exercised control over and/or receipt of the materially misleading misstatements and/or their association with the investment and made them privy to confidential proprietary information concerning these investments.  Because of their control and/or association with the investment, Defendants were active and culpable participants in the fraudulent scheme.

77.     Defendants knew and/or recklessly disregarded the falsity and misleading nature of the information which they caused to be disseminated to Investors.

78.     The ongoing fraudulent scheme described herein could not have been perpetrated over a substantial period of time, without the knowledge and complicity of the Defendants.

79.     As a result of the dissemination of materially false and misleading information

22

and the failure to disclose material facts, as set forth above, Investors paid artificially inflated prices for worthless membership interests in the investment during the Class Period.

80.     In ignorance of the materially false and misleading nature of the reports and statements described above, Plaintiffs and the other Class members relied, to their detriment, on Defendants for complete and accurate information about these investments.

81.     By virtue of the foregoing, Galemmo, Fund II and the Accountant Defendants have violated Section 10(b) of the Exchange Act, and Rule 10b-5 promulgated thereunder, and Plaintiffs and the Class have been damaged thereby, in an amount to be proven at trial.

### SECOND CLAIM FOR RELIEF
### For Violations of Section 20(a) of the Exchange Act
### Against Defendant Galemmo

82.     Plaintiffs incorporate by reference the allegations contained in Paragraphs 1 – 81 as if fully restated herein.

83.     At the time of the wrongs alleged herein, Defendant Galemmo was a controlling person of the Galemmo Entities within the meaning of Section 20(a) of the Exchange Act. By reason of his position of authority, Galemmo had the power and authority to influence and control, and did influence and control, the decision-making and activities of Fund II, and the affiliated Galemmo Entities and caused them to engage in the wrongful conduct described herein. Defendant Galemmo exercised control to cause the dissemination of false and misleading statements and omissions of material facts.

84.     By virtue of his position as a controlling person, and as a result of the aforementioned conduct, Galemmo is liable under Section 20(a) of the Exchange Act.

23

**THIRD CLAIM FOR RELIEF**
**(Violations of Sections 5 and 12(a)(1) of the 1933 Securities Act**
**Against Galemmo and Fund II)**

85.     Plaintiffs incorporate by reference the allegations contained in Paragraphs 1 – 84 as if fully restated.

86.     The Securities Act prohibits sale or delivery after sale of an unregistered security.

87.     Galemmo and Fund II failed to file a true Registration Statement for Fund II under the 1933 Act and for other investments.

88.     A Registration Statement must include the following:  (1) the entity's properties and business, (2) a full description of the offered security, (3) information about the management of the entity, and (4) a financial statement certified by an independent auditor. None of these were provided.

89.     By omitting this information, Galemmo and Fund II filed a false Form D.

90.     Galemmo and Fund II also failed to meet requirements for an exemption under Regulation D, through filing of an appropriate Form D notice for Fund II.

91.     Galemmo and Fund II certified that they would not sell to non-accredited investors.  Plaintiffs and other investors did not qualify as "accredited" investors able to evaluate the risks and merits of the investment and be able to bear the investment's economic risk.

92.     Galemmo and Fund II failed to provide to Plaintiffs, who were non-accredited investors, access to the information that Galemmo and Fund II were required to provide, including audited financial statements.

93.     Galemmo and Fund II failed to file annual amendments to Form D, as required

24

under Regulation D.

94.     Plaintiffs purchased these securities without knowledge of the failure of Galemmo and Fund II to file a Registration Statement that met the requirements for an exemption from registration.

95.     Plaintiffs would not have purchased the securities if Galemmo and Fund II provided the information required in a Registration Statement.

96.     By virtue of the foregoing, Plaintiffs have been damaged and are entitled to damages, including rescission, and other relief for violations by Galemmo and Fund II of Sections 12 of the 1933 Act alleged herein.

**FOURTH CLAIM FOR RELIEF**
**(Violations of Section 12(a)(2) of the Securities Act of 1933**
**Against Galemmo, Fund II and the Kyles Defendants**

97.     Plaintiffs incorporate by reference the allegations contained in Paragraphs 1 -- 96 as if fully restated herein.

98.     Galemmo, Fund II and the Kyles Defendants participated in the sale of securities to Plaintiffs that were unregistered and not exempt from registration.

99.     At the time of their investments, Plaintiffs had no knowledge that the investments offered by Galemmo, Fund II and the Kyles Defendants were subject to registration requirements. In fact, Galemmo, Fund II and the Kyles Defendants affirmed in the Subscription Agreement that the securities were not subject to the registration requirement of the Securities Act.

100.     Both the Offering Memorandum distributed to Plaintiffs and the oral communications with Plaintiffs contained material omissions and misstatements.

101.     Plaintiffs had no knowledge of the falsity of these statements or of the material

omissions in the written materials including, but not limited to, Monthly Accounting Statements prepared by the Kyles Defendants and other misrepresentations made by Galemmo and Fund II, as described above. Plaintiffs reasonably believed such statements were true.

102.    Galemmo, Fund II and the Kyles Defendants knew, or in the exercise of reasonable diligence, should have known, of the untruths and omissions.

103.    Plaintiffs would not have purchased the securities if they had this knowledge.

104.    As a result of these investments, Plaintiffs have been damaged.

105.    Plaintiffs are entitled to rescind their purchases and recover the value of their interest in Fund II. Plaintiffs seek rescission of their purchase of non-managing membership interests in Fund II.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and the Class, pray for judgment as follows:

A.    Declaring this action to be a Class Action properly maintained pursuant to the Federal Rules of Civil Procedure and certifying Plaintiffs as the class representatives;

B.    Awarding Plaintiffs and Class members rescission and/or compensatory damages against Defendants for all damages sustained as a result of their wrongdoing, in an amount to be proven at trial, including interest;

C.    Awarding Plaintiffs and Class members the reasonable costs and expenses of this litigation, including reasonable attorneys' fees and experts' fees and other costs and disbursements;

D.    The appointment of a receiver and an accounting; and

E.      Awarding Plaintiffs and the Class such other and further relief as may be just and proper under the circumstances.

## JURY DEMAND

Plaintiffs demand a trial by jury of all issues so triable.

Dated:  December 3, 2013

Respectfully submitted,

James R. Cummins (0000861)
Phyllis E. Brown (0037334)
CUMMINS & BROWN LLC
312 Walnut Street, Suite 1000
Cincinnati, OH 45202
(513) 241-6400 – Telephone
(513) 241-6464 – Facsimile
*jcummins@cumminsbrownlaw.com*
*pbrown@cumminsbrownlaw.com*

Richard S. Wayne (0022390)
Thomas P. Glass (0062382)
Brett M. Renzenbrink (0086723)
STRAUSS TROY CO., LPA
The Federal Reserve Building
150 East Fourth Street
Cincinnati, Ohio  45202-4018
(513) 621-2120 – Telephone
(513) 629-9426 – Facsimile
*rswayne@strausstroy.com*
*tpglass@strausstroy.com*
*bmrezenbrink@strausstroy.com*

37703

27



## CERTIFICATION OF JOHN CAPANNARI
## PURSUANT TO FEDERAL SECURITIES LAWS

John Capannari declares as follows:

1. I have reviewed the Complaint against Glen Galemmo ("Galemmo") and Queen City Investment Fund II, LLC ("Fund II"), et al.

2. I have retained as counsel in this litigation the law firms of Cummins & Brown LLC and Strauss Troy Co., LPA.

3. I did not purchase the investments that are the subject of this action at the direction of counsel in order to participate in any private action arising under the federal securities laws, including the Private Securities Litigation Reform Act ("PSLRA").

4. I am willing to serve as a representative party on behalf of the class in this litigation, including providing testimony at deposition and trial, if necessary.

5. During the Class Period, as defined in the Complaint, I purchased interests in Fund II as set forth on the attached Schedule A, which interests are the subject of the Complaint in this action.

6. I have not served as, or sought to serve as, a representative party on behalf of a class in any action filed under the PSLRA during the three-year period preceding the date on which this Certification is signed.

7. I will not accept any payment for serving as a representative on behalf of the class, except 1) to receive my pro rata share of any recovery as ordered and approved by the Court, and 2) to receive any award to me by the Court of reasonable costs and expenses (including lost wages and travel expenses) directly relating to my representation of the Class (as defined in the Complaint).

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge. Executed this ___ day of December, 2013.

_____
John Capannari

37698

## SCHEDULE A

| Name | Date of Investment | Net Investment |
|---|---|---|
| John Capannari ROTH IRA | 12/29/2011 | $63,602.94 |
| John Capannari IRA | 12/29/2011 | $3,615.21 |
| John Capannari IRA | 03/29/2012 | $833.40 |
| John Capannari IRA | 03/30/2012 | $1,250.00 |
| John Capannari IRA | 04/23/2012 | $416.66 |
| John Capannari IRA | 05/21/2012 | $416.66 |
| John Capannari IRA | 07/20/2012 | $416.66 |
| John Capannari IRA | 08/21/2012 | $416.66 |
| John Capannari IRA | 09/21/2012 | $416.66 |
| John Capannari IRA | 10/19/2012 | $416.66 |
| John Capannari IRA | 11/21/2012 | $416.66 |
| John Capannari IRA | 12/21/2012 | $416.66 |
| **TOTAL** | | **$72,634.83** |

37698

**B**

## CERTIFICATION OF JOHN A. ANDERSON
## PURSUANT TO FEDERAL SECURITIES LAWS

John A. Anderson ("Anderson") declares as follows:

1. Anderson has reviewed the complaint against Glen Galemmo ("Galemmo"), Queen City Investment Fund II, LLC ("Fund II"), Queen City Advisors, LLC, Galemmo Investment Group, Queen City Investment Funds, Queen City Investments, Queen City Hedge Fund, AC Power Strategies Fund II, LLC, QC Power Strategies Fund Sweep Account, LLC, QC Power Strategies Fund, LLC, Sentinel Property Holdings, LLC, Glen Rock, LLC, Sentinel Strategy Fund, LLC, QFC, LLC, Midwest Hoops at SportsPlus, LLC, Midwest Hoops Sports Complex, LLC and Cincinnati Royals, Inc., Rugged Power Management LLC, Rugged Power Investments LLC, PSIF LLC, W. Bernard Kyles & Co., Inc., Wiley B. Kyles, and Charles G. Simon.

2. Anderson has retained as counsel in this litigation the law firms of Strauss Troy Co., LPA and Cummins & Brown LLC.

3. Anderson did not purchase the investments that are the subject of this action at the direction of counsel in order to participate in any private action arising under the federal securities laws, including the Private Securities Litigation Reform Act ("PSLRA").

4. Anderson is willing to serve as a representative party on behalf of the class in this litigation, including providing testimony at deposition and trial, if necessary.

5. During the Class Period, as defined in the Complaint, Anderson purchased interests in Fund II as set forth on the attached Schedule A, which interests are the subject of the Complaint in this action.

6. Anderson has not served as, or sought to serve as, a representative party on behalf of a class in any action filed under the PSLRA during the three-year period preceding the date on which this Certification is signed.

7. Anderson will not accept any payment for serving as a representative on behalf of the class, except 1) to receive his pro rata share of any recovery as ordered and approved by the Court, and 2) to receive any award to him by the Court of reasonable costs and expenses (including lost wages and travel expenses) directly relating to his representation of the Class (as defined in the Complaint).

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge. Executed this **2nd** day of December, 2013.

John A. Anderson

## SCHEDULE A

| Name | Date of Investment | Amount of Investment |
|------|--------------------|-----------------------|
| John Anderson IRA | 10/29/2012 | $620,221.44 |
| John Anderson IRA | 10/29/2012 | $887,938.32 |
| **TOTAL** | | **$1,508,159.76** |

3529756.1