# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION (CINCINNATI)

|  |  |  |
|---|---|---|
| **JOHN G. CAPANNARI,** *et al.,* | : | **CIVIL ACTION NO. 1:13-CV-883** |
|  | : |  |
| **Plaintiffs,** | : | **Judge Michael Barrett** |
|  | : | **Mag. Stephanie Bowman** |
| **vs.** | : |  |
|  | : |  |
| **GLEN A. GALEMMO,** *et al.,* | : | **LEAD PLAINTIFFS' MOTION FOR** |
|  | : | **SUMMARY JUDGMENT AGAINST** |
| **Defendants.** | : | **CLAWBACK DEFENDANT STEVEN** |
|  | : | **SMITH, AFFIDAVIT OF PHYLLIS E.** |
|  | : | **BROWN, AND ATTACHED EXHIBITS** |

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Lead Plaintiffs John G. Capannari, John A. Anderson and Kevin Eickmann collectively ("Lead Plaintiffs"), through counsel, move this Court for summary judgment against Clawback Defendant Steven Smith. Lead Plaintiffs are entitled to judgment as a matter of law on their fraudulent transfer claim since there is no genuine dispute as to any material fact. The attached Memorandum and Affidavit of Phyllis E. Brown with attached exhibits are submitted in support this Motion.

Respectfully submitted,

/s/ Phyllis E. Brown
James R. Cummins (0000861)
Phyllis E. Brown (0037334)
Adam S. Brown (0078803)
Cummins & Brown LLC
312 Walnut Street, Suite 1000
Cincinnati, OH 45202
Telephone: 513-241-6400
Facsimile: 513-241-6464
jcummins@cumminsbrownlaw.com
pbrown@cumminsbrownlaw.com
abrown@cumminsbrownlaw.com

s/ Richard S. Wayne
Richard S. Wayne (0022390)
STRAUSS TROY CO., LPA
The Federal Reserve Building
150 East Fourth Street
Cincinnati, Ohio  45202-4018
(513) 621-2120 – Telephone
(513) 629-9426 – Facsimile
*rswayne@strausstroy.com*

# MEMORANDUM IN SUPPORT

## I. INTRODUCTION AND FACTUAL BACKGROUND

On November 14, 2014, Lead Plaintiffs filed their Second Amended Class Action Complaint for Violations of Federal Securities Laws, State Laws, and Damages against Glen Galemmo ("Galemmo"), Queen City Investment Fund II, LLC; Queen City Advisors, LLC; Galemmo Investment Group; Queen City Investment Funds; Queen City Investments; Queen City Hedge Fund; QC Power Strategies Fund Sweep Account, LLC; QC Power Strategies Fund, LLC; Queen City Power Strategies Fund II, LLC; Queen City Holdings, LLC; Sentinel Property Holdings, LLC; Glen Rock, LLC; Sentinel Strategy Fund, LLC; Sentinel Blackbox, LLC; QFC, LLC; Midwest Hoops At Sportsplus, LLC; Cincinnati Royals, Inc.; Queen City Hedge Fund, LLC; Baamb, LLC; PSIF, LLC; (together "the Galemmo Entities"); Kristine Galemmo; James Perry; James Perry Trust; ASL Properties, Inc.; Luther Lynnn Shelby; Christopher Job; Wiiliam Cox; Irwin Cohen; Allison Bristol; William Bristol; Rob Morris; Leonard Morris; Richard Morris; Ira Stein; Leslie Stein; Steven Smith; Andrew Miller; Mika Miller; Larry Wein; L.W. Capital Corporation; Joseph A. Galemmo, Sr.; Cheryl A. Galemmo; Joseph A. Galemmo, Jr.; Mary Ann Galemmo; Kirk Teneyck; Atlas Commodities LLC; and William T. Schamp (together "the Clawback Defendants). Steven Smith ("Smith") was served by regular mail on November 24, 2014. Affidavit of Phyllis E. Brown ("Brown Aff.").

This class action was brought on behalf of approximately 200 investors who were fraudulently and unlawfully induced by Galemmo to invest over $50,000,000 of their money from pension plans, IRAs, retirement accounts and other personal investment accounts into what has been described as one of the largest Ponzi schemes in the history of the Ohio Valley. The massive fraud perpetrated by Galemmo and the Galemmo Entities went on for over eleven years

3

and brought financial ruin to the Lead Plaintiffs and class members, who were deceived into investing their pension plans, IRA's, retirement accounts, life savings, children's college funds and other monies with Defendant Galemmo and the Galemmo Entities.

Following the collapse of the Ponzi scheme, it became clear that the various investments promoted by Galemmo and the Galemmo Entities did not actually exist and were simply a means to funnel victims' money to Galemmo and the Galemmo Entities. Although Galemmo provided prospective clients with "offering memorandums" and "subscription agreements," he actually invested only a small amount of the money he received and used the vast majority of those funds to pay back investors and provide for the personal expenses of himself and his family.

Smith is among the "Clawback Defendants": those investors who received distributions from Galemmo and the Galemmo Entities that exceeded the amount of principal they invested. Under applicable law, all profits from Galemmo's Ponzi scheme, including profits of other investors, must be returned to Lead Plaintiffs and Class members to partially reimburse them for their losses. See R.C. 1336.01 et seq. (Fraudulent Transfers). Clawbacks occur after a fraud has been established. In this case, Galemmo admitted the fraud and executed a plea agreement with the United States Attorney for the Southern District of Ohio. Galemmo admitted his guilt to the following:

A.    Wire Fraud

      1.    That Galemmo devised a scheme to defraud investors to obtain money and property by means of false and fraudulent representations;

      2.    That Galemmo's scheme included material misrepresentations and/or concealment of material facts, and

      3.    That Galemmo had intent to defraud.

B.    Money Laundering

      1.    That Galemmo conducted financial transactions involving the proceeds of the fraud;

2.   That Galemmo knew that the property involved in the financial
     transactions represented the proceeds of unlawful activities; and

3.   That Galemmo knew that the transactions were designed to conceal the
     nature, source, ownership and control of such proceeds.

*United States of America v. Glen Galemmo,* United States District Court, Southern District of
Ohio, Case No.: 1:13-CR-141, Plea Agreement attached as Exhibit A to Brown Aff.

In his Plea Agreement, Galemmo stipulated to a lengthy Statement of Facts that described
how he defrauded hundreds of investors through his Ponzi scheme and relied on a shell game
played with investors' funds. Galemmo fabricated monthly statements that described
investments never executed, stock sales that never happened and fictitious profits. *Id.*

In his deposition, Galemmo testified that as of 2008, the Galemmo Entities were
insolvent:

Q.   Was the fund insolvent at the point in time that you
     extended the Morrow loans?

A.   No.

Q.   At what point in time did the fund become insolvent, if —

A.   When I made the returns, you know, go — you know, when
     there was basically no money being made in 2008, I think
     we did like 32 percent. That was a problem.

Q.   By a problem, you had overinflated to investors what they
     had actually made?

A.   Yeah.

Q.   And you weren't able to pay it?

A.   Correct.

Dep. of G. Galemmo 277: 17-25; 278: 1-6.[1]

And,

---

[1] Brown Aff., attached Exhibit B. All cited pages of the deposition of Glen Galemmo are
attached hereto,

Q.    Okay. I believed you testified yesterday that the fund was insolvent in 2008; is that correct?

A.    I believe I said yesterday in 2008 if everybody asked for their money back, I could not give it to them. Let's put it –

Q.    So in 2008, the fund owed more than it had in assets; is that right?

A.    Correct.

Dep. of G. Galemmo. 374: 19-25; 375: 1-5.

Like the other Clawback Defendants, Smith received more in distributions than the amount of his investment with Galemmo and the Galemmo Entities. Bank records demonstrate the specific amounts that Smith invested with Galemmo and the Galemmo Entities and the specific amounts of his withdrawals:

| DATE | DEPOSIT WITH GALEMMO | WITHDRAWAL TO SMITH | FORM OF PAYMENT |
|---|---|---|---|
| 01/01/2000 | $30,000 | 0 | Check |
| 11/01/2000 | $10,000 | | |
| 11/09/2006 | $50,000 | 0 | Check |
| 10/08/2008 | $58,267.40 | 0 | IRA |
| 05/18/2010 | 0 | $30,000 | QFC check #1031 |
| 08/09/2010 | 0 | $25,000 | Wire |
| 12/17/2010 | 0 | $15,000 | Wire |
| 03/07/2011 | 0 | $15,000 | Wire |
| 11/07/2011 | 0 | $25,000 | Wire |
| 03/06/2012 | 0 | $130,000 | Wire |
| 07/11/2012 | 0 | $5,000 | QFC check #2173 |
| 09/17/2012 | 0 | $225,000 | Wire |
| | $148,267.40 | $470,000.00 | |

Bank records demonstrate that as of 2008, Smith had invested $148,267.40, including IRA funds. In 2010, Smith began withdrawing funds – and invested no additional funds. As of September 2012, Smith had withdrawn $470,000, which is $321,730.60 more than he invested. Brown Aff., Exh. C.

On December 9, 2014, Lead Plaintiffs, through counsel, served Smith with a set of Requests for Admissions. Brown Aff., Exh. D. Smith never responded. *Id.* A follow-up letter with another copy of the same set of Requests for Admissions was sent to Smith on April 27, 2015 *Id.*, Exh. E. Smith again failed to respond. *Id.* A third letter was sent to Smith on May 5, 2015, with yet another copy of the set of Requests for Admissions. *Id.*, Exh. F. Again, there was no response. *Id.* It has been five months since Smith was served with the Requests for Admissions. Smith has neither responded nor provided any indication that a response would be forthcoming.

In the Requests for Admissions, Smith was asked to admit the following:

**Request for Admission No. 1:**
Admit that Smith was an investor in the Galemmo Entities.

**Response:**


**Request for Admission No. 2:**
Admit that Smith invested and/or loaned a total amount of approximately $156,000 (sic) in the Galemmo Entities.

**Response:**


**Request for Admission No. 3:**
Admit that Smith withdrew a total amount of approximately $470,000 from the Galemmo Entities in return for his investments and/or loans.

**Response:**


**Request for Admission No. 4:**
Admit that Smith received more money from the Galemmo Entities than he invested and/or loaned to the Galemmo Entities.

**Response:**


**Request for Admission No. 5:**

Admit that Smith provided no services of reasonably equivalent value to the Galemmo Entities.

**Response:**

*Id.*, Exh. D.

Unanswered Requests for Admissions constitute binding admissions by the non-respondent. A matter is deemed admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party or its attorney. Fed.R.Civ.P. R. 36(a)(3); *see also Luick v. Graybar Electric Co., 473 F.2d 1360, 1362 (8th Cir.1973)* ("Unanswered requests for admissions render the matter requested conclusively established for the purpose of that suit.").

Accordingly, Smith has admitted: (1) that he was an investor in the Galemmo Entities; (2) that he invested in and/or loaned a total amount of approximately $156,000 (sic) to the Galemmo Entities; (3) that he withdrew a total amount of approximately $470,000 from the Galemmo Entities; (4) that he withdrew more money from the Galemmo Entities than he invested and/or loaned to the Galemmo Entities; and (5) that he provided no services of reasonably equivalent value to the Galemmo Entities. Brown Aff., Exh. D.

Smith's admissions align with the documentary evidence obtained in discovery. Records demonstrate that Smith invested $148,267.40 and withdrew $470,000. Brown Aff., Exh. C. Smith received at least $321,732.60 through fraudulent transfers from Galemmo and the Galemmo Entities. These funds belong to the Victims.

## II. LEGAL ARGUMENT

### A. <u>Standard of Review</u>

Summary Judgment is appropriate when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317,

322-23, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) (citing Fed. R. Civ. P. 56(c)); *see also*

*LaPointe v. UAW, Local 600*, 8 F.3d 376, 378 (6th Cir. 1993). The burden of showing the

absence of any such genuine issues of material facts rests with the moving party. *Celotex*, 477

U.S. at 323 (citing Fed. R. Civ. P. 56(c)). To overcome a motion for summary judgment, a

Defendant must show sufficient evidence to create a genuine issue of material fact. *Klepper v.*

*First Am. Bank*, 916 F.2d 337, 342 (6th Cir. 1990). A mere scintilla of evidence is insufficient:

"there must be evidence on which the [fact finder] could reasonably find for the [non-movant]."

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

A fact is "material only if its resolution will affect the outcome of the lawsuit." *Id.*

Accordingly, the nonmoving party must present "significant probative evidence" to demonstrate

that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip*

*Morris Co., Inc.,* 8 F.3d 335, 340 (6th Cir. 1993). The nonmoving party may not simply rely on

its pleading, but must "produce evidence that results in a conflict of material fact to be solved by

a jury." *Cox v. Kentucky Dep't. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995).

**B.**    **Smith Must Disgorge To The Class Excess Funds He Withdrew From The Galemmo Entities**

Lead Plaintiffs and the Class seek return of funds withdrawn from the Galemmo Entities

by Clawback Defendant Smith that exceed the principal he invested in the Galemmo Entities.

These funds were fraudulently transferred by the Debtors Galemmo and the Galemmo Entities in

furtherance of a Ponzi scheme.

Under Ohio law, a fraudulent transfer consists of the following elements:

> (A)    A transfer made or an obligation incurred by a debtor is
> fraudulent as to a creditor, whether the claim of the creditor
> arose before, or within a reasonable time not to exceed four
> years after the transfer was made or obligation was

incurred, if the debtor made the transfer or incurred the obligation in either of the following ways:

(1)    With actual intent to hinder, delay, or defraud any creditor of the debtor;

(2)    Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and if either of the following applies:

(a)    The debtor was engaged or was about to engage in a business or transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction;

(b)    The debtor intended to incur, or believed or reasonably should have believed that the debtor would incur debts beyond the ability to pay as they became due.

R.C. 1336.04.

The transfers from the Galemmo Entities to Clawback Defendant Smith were fraudulent.

- Galemmo and the Galemmo Entities are Debtors under Ohio law. R.C.1336.01(E).

- By Galemmo's own admission, Galemmo and the Galemmo Entities were insolvent as of 2008.

- Clawback Defendant Smith received distributions from the Debtors in excess of the principal he invested with the Galemmo Entities.

- Clawback Defendant Smith provided no reasonably equivalent value to the Galemmo Entities.

Galemmo stipulated to fact that he was operating a fraudulent Ponzi scheme:

From 2006 to July 2013, **GALEMMO** received approximately $87 million cumulatively from individual investors, trusts, charitable organizations, and retirement accounts/ During this time period, **GALEMMO** also received approximately $29 million from some of these investors in the form of short term loans. **GALEMMO** received these funds through interstater wire transfers and through mailings delivered by the United States Postal Service. The vast majority of these funds were never invested in anything. Rather, the funds were paid to

other investors in the form of principle and/or interest payments or spent by **GALEMMO** to finance other businesses or pay for personal expenses.
Brown Aff., Exh. A, 10.

In the context of a Ponzi scheme, intent is presumed because the Debtor undeniably knows that "future investors will not be paid," thus evidencing an intent to defraud creditors. See *Bash v. Textron Fin. Corp., 524 B.R. 745, 757 (N.D. Ohio 2015)* ("Thus, to the extent the Trustee is able to establish that Fair Finance constituted a Ponzi scheme, fraudulent intent will be inferred."); see also, *In re Independent Clearing House Co.*, 77 B.R. 843 (D.Utah 1987). Federal courts hold that the existence of a Ponzi scheme establishes as a matter of law that any transfers pursuant to the scheme are constructively fraudulent, because (1) the investors do not provide reasonably equivalent value for their "fictitious profits"; and (2) the Ponzi scheme is inherently insolvent because each new investor has a tort claim that cannot be repaid. *Scholes v. Lehmann, 56 F.3d 750, 755 (7th Cir. 1995)* (corporations run as part of Ponzi scheme "were insolvent from the outset," because "*defrauded* investors ... are tort creditors"); *Warfield v. Byron*, 436 F.3d 551, 558 (5th Cir. 2006) ("[A] Ponzi scheme ... is, as a matter of law, insolvent from its inception.").

As a matter of law and fact, Galemmo and the Galemmo Entities were insolvent from 2008 and Galemmo operated a Ponzi scheme. Galemmo and the Galemmo Entities fraudulently transferred funds to Smith. Smith has admitted that he withdrew $321,732.60 from the Galemmo Entities in excess of his investment. These funds belong to the Plaintiff Class of victims.

## III.  CONCLUSION

For the foregoing reasons, Lead Plaintiffs respectfully request this Court to enter an

Order granting their Motion for Summary Judgment and ordering Clawback Defendant Smith to

disgorge the amount of $321,732.60 to Lead Plaintiffs and the Class.

Respectfully submitted,

By: /s/ Phyllis E. Brown
James R. Cummins (0000861)
Phyllis E. Brown (0037334)
Adam S. Brown (0078803)
Cummins & Brown LLC
312 Walnut Street, Suite 1000
Cincinnati, OH 45202
Telephone: 513-241-6400
Facsimile: 513-241-6464
jcummins@cumminsbrownlaw.com
pbrown@cumminsbrownlaw.com
abrown@cumminsbrownlaw.com


s/ Richard S. Wayne
Richard S. Wayne (0022390)
STRAUSS TROY CO., LPA
The Federal Reserve Building
150 East Fourth Street
Cincinnati, Ohio 45202-4018
(513) 621-2120 – Telephone
(513) 629-9426 – Facsimile
*rswayne@strausstroy.com*

## CERTICATE OF SERVICE

The undersigned hereby certifies that on May 14th, 2015, a true and correct copy of the foregoing was electronically filed with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all parties of record. Parties not represented by counsel will be served by U.S. Mail or Electronic Mail.

s/ Adam S Brown
Adam S Brown

39239

# AFFIDAVIT
# PHYLLIS E. BROWN

JOHN CAPANNARI, ET AL.,                    :    CIVIL ACTION NO. 1:12-cv-00956
                                           :
                    Plaintiffs,            :    Judge Sandra S. Beckwith
                                           :
     v.                                    :    Magistrate Judge Stephanie K. Bowman
                                           :
GLEN GALEMMO, ET AL.,                      :    AFFIDAVIT OF PHYLLIS E. BROWN,
                                           :    ESQ. IN SUPPORT OF PLAINTIFFS'
                    Defendants.            :    MOTION FOR SUMMARY JUDGMENT
                                           :    AGAINST CLAWBACK DEFENDANT
                                           :    STEVEN SMITH


STATE OF OHIO                )
                             )  SS:
COUNTY OF HAMILTON           )


I, Phyllis E. Brown, being first duly cautioned and sworn, hereby states as follows:

1.      My name is Phyllis E. Brown, an attorney admitted to practice in the State of Ohio and in the Southern District of Ohio.

2.      I, along with other members of Cummins & Brown LLC, am counsel for Lead Plaintiffs John G. Capannari, John A. Anderson and Kevin Eickmann.

3.      On November 24, 2014, Defendant Steven Smith was served with a copy of the Second Amended Complaint, *Capannari v. Glen G. Galemmo,* Case No.: 1:13-cv-883.

4.      Attached hereto as Exhibit A is the Agreement from *United States v. Glen Galemmo,* United States District Court, Southern District of Ohio, Case No.: 13-141.

5.      Attached as Exhibit B are the cited pages of the deposition of Glen A. Galemmo, referred to in the Memorandum in Support of Summary Judgment.

6.      Attached as Exhibit C are the bank records of deposits and withdrawals of Steven Smith into accounts of the Galemmo Entities.

7.     Attached as Exhibit D are the Requests for Admissions that were served on Defendant Steven Smith on December 9, 2014.

8.     Smith failed to respond.

9.     Attached as Exhibit E is a copy of the first follow up letter sent to Smith on April 27, 2015 with another copy of the Requests for Admissions.

10.    Smith failed to respond.

11.    Attached as Exhibit F is a copy of another follow up letter that was sent to Smith on May 5, 2015 with a copy of the Requests for Admissions.

12.    Again, Smith failed to respond.

FURTHER AFFIANT SAYETH NAUGHT.

_____
Phyllis E. Brown

Sworn to before me and subscribed in my presence by the said Phyllis E. Brown this 14 day of May, 2015.

_____
Notary Public



# Exhibit A

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff, | : <br> : <br> : | CASE NO. _____ |
| v. | : <br> : | **1:13CR - 141**<br>**J. WEBER** |
| GLEN GALEMMO,<br>Defendant. | : <br> : <br> : | **PLEA AGREEMENT** |

The United States Attorney for the Southern District of Ohio and the defendant, individually and through counsel, pursuant to Rule 11(c)(1)(A) of the Federal Rules of Criminal Procedure, agree as follows:

1. <u>Offense of Conviction</u>: The Defendant agrees to waive indictment and plead guilty to the Information currently pending against him, which charges him with Wire Fraud (Count One), in violation of 18 U.S.C. § 1343 and Money Laundering (Count Two), in violation of 18 U.S.C. § 1956.  The Defendant admits that he is, in fact, guilty of these offenses and will so advise the Court.

    The United States Attorney for the Southern District of Ohio will not further prosecute the Defendant for the conduct described in the Information and attached Statement of Facts.

2. <u>Elements of the Offense</u>: The elements of the offense to which the Defendant has agreed to plead guilty, and which the United States Attorney's Office (USAO) would prove if the case went to trial, are as follows:

    <u>Count One (Wire Fraud)</u>
    a. That the Defendant devised a scheme to defraud in order to obtain money or property, that is to defraud investors to obtain money and property by means of false and fraudulent pretenses, representations, and promises;

    b. That the scheme included a material misrepresentation or concealment of a material fact;

    c. That the Defendant had the intent to defraud;

    d. That the Defendant used or caused another to use wire, radio or television

1

communications in interstate commerce in furtherance of the scheme; and

e. That some or all of the acts alleged in the Information occurred in the Southern District of Ohio, on or about the dates alleged in the Information.

Count Two (Money Laundering)

a. That the Defendant conducted a financial transaction;

b. That the financial transaction involved property that represented the proceeds of wire fraud in violation of 18 U.S.C. § 1343;

c. That the Defendant knew that the property involved in the financial transaction represented the proceeds of some form of unlawful activity; and

d. That the Defendant knew that the transaction was designed in whole or in part to conceal or disguise the nature, location, source, ownership, control of the proceeds of said specified unlawful activity; and

e. That some or all of the acts alleged in the Information occurred in the Southern District of Ohio, on or about the dates alleged in the Information.

3. **Penalties**: The maximum sentence is as follows:

a. *Count One*: Not more than twenty years imprisonment, a fine not to exceed $250,000 or, more than the greater of twice the gross gain by the defendant or twice the gross loss to another, and a term of supervised release not longer than three (3) years;

b. *Count Two*: Not more than twenty years imprisonment, a fine not to exceed the greater of either $500,000 or twice the value of the property involved in the transaction, and a term of supervised release not longer than three (3) years;

c. Additional imprisonment if the Defendant violates the conditions of his supervised release;

d. Restitution and forfeiture; and

e. A mandatory special assessment of $200, due prior to sentencing.

4. **Waiver of Rights**: The Defendant understands that by entering into this agreement, he surrenders certain rights, among others, as outlined below:

a. To be represented by an attorney at every stage of the proceeding, and that, if necessary, one will be appointed to represent him;

2

b. To plead not guilty and to be tried by a jury;

c. To be assisted by counsel during such trial;

d. To confront and cross-examine adverse witnesses;

e. To compel witnesses for the defense;

f. Not to be compelled to testify;

g. To be presumed innocent throughout trial and until a jury finds proof of guilt beyond a reasonable doubt; and

h. To appeal the jury's verdict and the Court's decisions regarding the admissibility of evidence.

By pleading guilty, the Defendant understands that he will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status if the he is not a United States citizen.

5. **Waiver of Defenses**: The Defendant waives all defenses based on the statute of limitations and the Speedy Trial Act as to any charges that are not time-barred as of the date that Defendant signs this agreement.

6. **Use of Statements**: The Defendant waives any protection afforded by Rule 11(f) of the Federal Rules of Criminal Procedure, Rule 410 of the Federal Rules of Evidence, and § 1B1.8(a) of the United States Sentencing Guidelines Manual. Any statements made by Defendant in the course of plea discussions, in any proceeding under Rule 11 of the Federal Rules of Criminal Procedure, and during any cooperation with law enforcement authorities will be admissible against Defendant without limitation in any civil or criminal proceeding.

7. **Applicability of Advisory Sentencing Guidelines**: The Defendant understands that the sentence in this case will be imposed by the Court. In determining an appropriate sentence, the Court will consider the factors outlined in 18 U.S.C. § 3553(a), along with the applicable advisory, sentencing range under the United States Sentencing Guidelines ("U.S.S.G.").

8. **Factual and Advisory Guidelines Stipulation**: The parties agree to the Statement of Facts set forth in Attachment A, and incorporate them here by reference, and to the following advisory sentencing guideline factors:

a. *Count One*: Wire Fraud, in violation of 18 U.S.C. § 1343.

3

i. Pursuant to U.S.S.G. § 2B1.1(a)(1), the base offense level is **7**, because the statutory maximum sentence for wire fraud is 20 or more years.

ii. Pursuant to U.S.S.G. § 2B1.1(b)(1)(K), **20** levels are added because the loss to investors exceeded $7,000,000, but was less than $20,000,000.

iii. Pursuant to U.S.S.G. § 2B1.1(b)(2)(B), **4** levels are added because the offense involved more than 50 victims but less than 250 victims.

iv. The government contends that pursuant to U.S.S.G. § 2B1.1(b)(18), **4** levels are added because the offense involved a violation of securities and/or commodities law and at the time of the offense the defendant was a registered broker or dealer or a person associated with a registered broker or dealer, and/or the defendant was a commodity pool operator. The final offense level for Count I is **35** (government's position) or **31** (the defendant's position).

b. *Count Two*: Money Laundering, in violation of 18 U.S.C. § 1956(a)(1).

i. Pursuant to U.S.S.G. § 2S1.1(a)(1), the base offense level is the offense level from Count I.

ii. Pursuant to U.S.S.G. § 2S1.1(b)(2)(B), **2** levels are added because Count Two is a violation of 18 U.S.C. § 1956, bringing the final offense level for Count II to **37** (government's position) or **33** (the defendant's position).

c. *Grouping*: Pursuant to U.S.S.G. § 3D1.2(d), Counts One and Two group and the combined offense level becomes **37** (government's position) or **33** (the defendant's position).

d. The USAO does not oppose a 2 level reduction in offense level pursuant to U.S.S.G. § 3E1.1 based upon the Defendant's acceptance of responsibility, provided that the Defendant's conduct continues to demonstrate compliance with the terms of § 3E1.1.

e. The USAO agrees to make a motion pursuant to U.S.S.G. § 3E1.1(b) for an additional 1 level decrease in recognition of the Defendant's timely notification of his intention to plead guilty. However, the USAO reserves the right to oppose any adjustment for acceptance of responsibility at sentencing if the Defendant: (1) gives conflicting statements about his involvement in the offense; (2) is untruthful with the Court, this Office, or the United States Probation Office; (3) obstructs justice prior to sentencing; (4) engages in any criminal conduct between the date of this agreement and the date of

4

sentencing; or (5) attempts to withdraw his plea of guilty. **The final offense level is 34** (government's position) or 30 (the defendant's position).

    f. There is no agreement as to the Defendant's criminal history or criminal history category, and the Defendant understands that his criminal history could affect his advisory sentencing guideline range.

9. **Waiver of Appeal:** The Defendant waives the right to appeal the sentence imposed, including the right conferred by 18 U.S.C. § 3742(a), except that the Defendant reserves the right to appeal a sentence of imprisonment that exceeds 188 months. This waiver shall not be construed to bar a claim by the Defendant of ineffective assistance of counsel or prosecutorial misconduct. The government reserves the right to appeal a sentence of imprisonment below 97 months.

10. **Freedom of Information Act:** The Defendant waives all rights under the Freedom of Information Act relating to the investigation and prosecution of him and agrees not to file any request for documents.

11. **Forfeiture:** The Defendant agrees to forfeit to the United States of America the property listed below pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c) as proceeds of wire fraud and/or 18 U.S.C. § 982(a)(1) property involved in money laundering. The Defendant further agrees to waive all legal and equitable defenses to the forfeiture of the property listed below (hereinafter "the subject property") and agrees not to challenge the forfeiture in any manner:

    a. Real property known and numbered as 2230 Park Avenue, Cincinnati, Hamilton County, Ohio 45206 with all appurtenances, improvements, and attachments thereon;

    b. The Contents of US Bank Account x5618 in the name of Queen City Investment Fund II ("US Bank x5618") in the amount of Four Hundred Thirteen Dollars and Ninety-Eight Cents ($413.98);

    c. The Contents of US Bank Account x8448, in the name of Queen City Holdings, LLC, ("US Bank x8448"), in the amount of Three Hundred Fifty-Two Dollars and Sixty-Four Cents ($352.64);

    d. The Contents of US Bank Account x4670, in the name of QFC, LLC, ("US Bank x4670") in the amount of Four Hundred Twenty-four Thousand Two Hundred Thirty-eight Dollars and Three Cents ($424,238.03);

5

e.  The Contents of Keybank Account x5922, in the name of Glen and
    Kristine Galemmo, ("Keybank x5922") in the amount of Thirty-Six
    Thousand Fifty-Nine Dollars and Twenty Cents ($36,059.20);[1]

f.  The Contents of Dorman Trading Account x633, in the name of
    QFC, LLC, ("Dorman x633") in the amount of Ten Thousand Seven
    Hundred Seventy-Two Dollars and Thirty-Six Cents ($10,772.36);

g.  The Contents of Dorman Trading Account x695, in the name of
    QFC, LLC, ("Dorman x695") in the amount of Five Thousand
    Dollars ($5,000.00);

h.  The Contents of Dorman Trading Account x696, in the name of
    QFC, LLC, ("Dorman x696") in the amount of One Hundred
    Ninety-Two Thousand Four Hundred Fifty Dollars and
    Twenty-Five Cents ($192,450.25);

i.  The Contents of Interactive Brokers, LLC Account x016, in the
    name of QFC, LLC, ("Interactive x016") in the amount of Five
    Hundred Fourteen Thousand One Hundred Seventy-Six Dollars and
    Sixty-Five Cents ($ 514,176.65);

j.  The Contents of Interactive Brokers, LLC Account x438, in the
    name of QFC, LLC, ("Interactive x438") in the amount of One
    Thousand Seven Hundred Sixty Six Dollars and Thirty-Five Cents
    ($1,766.35);

k.  Real property known and numbered as 1849 Madison Avenue,
    Cincinnati, Hamilton County, Ohio 45206 with all appurtenances,
    improvements, and attachments thereon;

l.  Real property known and numbered as 6000 Royal Marco Way,
    Unit 454, Marco Island, Florida 34145 with all appurtenances,
    improvements, and attachments thereon;

m.  The Contents of Key Bank Account X5628 in the name of QC
    Power Strategies Fund, LLC ("Key Bank X5628") in the amount of
    Four Hundred Forty Thousand Three Hundred Seventy Dollars and
    Seventy-Eight Cents ($440,370.78);

n.  A 2007 GMC Yukon XL, VIN 1GKFK66897J236949, titled to
    Kristine Galemmo;

---

[1] The Defendant's agreement to forfeit his interest in the Contents of Key Bank Account x5922, does not preclude
Kristine Galemmo from asserting a claim in the account based upon her own interest in the account.

6

    o.     A 2007 GMC Acadia, VIN 1GKER23787J159616, titled to Kristine
            Galemmo;

    p.     A 2004 Nissan 350Z, VIN JN1AZ36A04M251517, titled to
            Jones-Morris Group, LLC;

    q.     A 2012 Audi A8, VIN WAURVAFD1CN017564, titled to QFC,
            LLC;

    r.     A 2013 Toyota Highlander, VIN 5TDDK3EH2DS194089, titled to
            Kristine Galemmo;

    s.     The Contents of First Citizens Bank Account X1609 in the name of Kristine
            Galemmo in the amount of One Hundred Two Thousand Twenty-Six
            Dollars and Ninety-Two Cents ($102,026.92); and

    t.     The Contents of First Citizens Bank Account X3209 in the name of Kristine
            Galemmo in the amount of Twelve Thousand Three Dollars and Two Cents
            ($12,003.02).

The Defendant agrees to assist the United States to resolve in its favor any claims by
another individual to the subject property. The Defendant agrees to take all necessary
steps to pass clear title to the subject property to the United States, and to testify truthfully
in any forfeiture proceeding. The defendant agrees not to contest the administrative or
judicial forfeiture of the subject property and to consent to the entry of judgments and
orders of forfeiture of the subject property.

12.    **Restitution:** The Defendant agrees to pay restitution in an amount to be determined by
       the Court. The Defendant acknowledges that the Court shall determine a monthly
       payment schedule. Such payments will be completed within the period of his supervised
       release. In the event the Defendant is unable to pay completely the total amount of
       restitution owed prior to termination of the supervised release period, he agrees to make
       regular monthly payments toward such liability in an amount to be determined by the
       Court. Such amount will be set in accordance with the Defendant's financial ability.

13.    **Tax Liability:** The Defendant agrees that nothing in this agreement forecloses or limits the
       ability of the IRS to examine and make adjustments to any return filed pursuant to this
       agreement, and that the defendant will not, after filing the returns, file any claim for refund
       of taxes, penalties or interest for amounts attributable to the returns filed in connection with
       this plea agreement. The Defendant further agrees:

    a.     to file with the IRS complete and accurate amended U.S. Individual Income
            tax returns (defendant's personal returns) for all previously-filed incomplete
            or inaccurate tax returns, including the 2011 tax year and periods up to the

date of sentencing;

b. to fully cooperate with the IRS in order to determine and calculate all taxes, interest, and penalties due and owing by the defendant to the United States, including but not limited to making defendant's books and records available, and providing supporting documentation to the IRS for examination and copying upon reasonable request;

c. to pay to the IRS all taxes, penalties, and interest due and owing by the defendant to the United States, including but not limited to all taxes, penalties, and interest owed on all returns filed pursuant to this plea agreement, or, if financially unable to do so, make repayment arrangements which are satisfactory to the IRS;

d. to comply with the tax laws of the United States; and

e. to allow the contents of any criminal file maintained by this office or IRS Criminal Investigation to be given to the IRS Examination and Collection Divisions in order to investigate any and all civil taxes and penalties that may be due and owing by defendant. With respect to disclosure of the criminal file, the defendant waives any rights under 26 U.S.C. § 7213, and any other right of privacy with respect to the Defendant's tax returns and return information.

14. **Court Not A Party:** The Defendant understands that the Court is not a party to this agreement and it is within the sole discretion of the Court to impose the sentence in this case. The Defendant further understands that the Court is not obligated to accept the parties' sentencing guidelines stipulation and may impose a sentence up to the statutory maximum sentence stated above. The Defendant understands that if the Court imposes a sentence up to the statutory maximum, the Defendant cannot, for that reason alone, withdraw his guilty plea, and will remain bound by this agreement.

15. **Violation of Plea Agreement:** The Defendant understands that in the event he breaches this agreement:

a. The Defendant shall not have the right to withdraw the guilty plea; and

b. The USAO will be relieved of all of its obligations under this agreement and may institute or maintain any charges or sentencing recommendations that would otherwise be prohibited by this agreement.

16. **Entire Agreement:** There are no agreements, understandings or promises between the parties other than those contained in this agreement.

Respectfully submitted,

CARTER M. STEWART
United States Attorney

*Emily M. Glatfelter*

EMILY N. GLATFELTER (0075576)
Assistant United States Attorney
221 East Fourth Street
Suite 400
Cincinnati, Ohio 45202


I have read this agreement and carefully reviewed every part of it with my attorney.   I understand it, I voluntarily agree to it, and I do not wish to change any part of it.   I am completely satisfied with the representation of my attorney.

12/15/13
Date

GLEN GALEMMO
Defendant


I am Glen Galemmo's attorney.   I have carefully reviewed every part of this agreement with him.   He advises me that he understands and accepts its terms.   To my knowledge, his decision to enter into this agreement is an informed and voluntary one.

1/16/13
Date

BENJAMIN G. DUSING, ESQ.
Counsel for Glen Galemmo

9

## ATTACHMENT A:
## STATEMENT OF FACTS

*The United States and Defendant Glen Galemmo stipulate and agree that if this case proceeded to trial, the United States would prove the facts set forth below beyond a reasonable doubt. They further stipulate and agree that these are not all of the facts that the United States would prove if this case had proceeded to trial.*

At some point prior to 2005, through July 17, 2013, in the Southern District of Ohio and elsewhere, the defendant, **GLEN GALEMMO ("GALEMMO")**, perpetrated a scheme to defraud his investors by soliciting millions of dollars under false pretenses, failing to invest investor's funds as promised, and misappropriating and converting investors' funds to **GALEMMO's** own benefit without the knowledge or authorization of the investors, using interstate wire communications to execute the scheme to defraud.

The defendant, **GALEMMO** is the sole owner and operator of Queen City Investments a/k/a Queen City Investment Fund II, LLC a/k/a Queen City Holdings, LLC a/k/a Queen City Hedge Fund, LLC a/k/a QFC, LLC (hereinafter "Queen City Investments"), which had its principal place of business in Cincinnati, Ohio. **GALEMMO** also formed with others or caused to be formed the following entities between 2011 and 2013: Sentinel Strategy Fund, LTD; Sentinel Holdings Property, LLC; Sentinel Blackbox, LLC; Jones-Morris Group, LLC; Vasuda Fund; Vasuda Advisors, LLC; PSIS, LLC; QC Power Strategies Fund Sweep Account, LLC; Glen Rock, LLC; QC Power Strategies Fund, LLC and; QC Power Strategies Fund II, LLC. In addition to owning and operating several investment businesses, **GALEMMO,** operated Midwest Hoops Sports Complex in Florence, Kentucky and Midwest Sportsplus, LLC in Cincinnati, Ohio, both of which are sports entertainment complexes.

Since at least 2003, **GALEMMO** has marketed himself as someone experienced in the financial services industry, licensed as a Series 7, General Securities representative, Series 8, General Securities Sale Supervisor, Series 24, General Securities Principal, Series 63 and Uniform State Agent with the National Association of Securities Dealers.

From at least 2003 through July 17, 2013, **GALEMMO** operated a hedge fund and offered various investment opportunities to clients in the Southern District of Ohio and elsewhere. For example, **GALEMMO** offered clients the opportunity to invest in his hedge fund and to roll over their retirement accounts for him to manage. In addition, **GALEMMO** offered a small number of clients the opportunity to take advantage of short-term investment opportunities in the form of short-term loans.

**GALEMMO** solicited prospective clients to invest with him based upon his promise to invest client funds in a private equity fund, whose flexibility allowed for greater investment opportunities and was capable of "going short" to provide higher protection from losses. **GALEMMO** often provided a "confidential business overview," an "offering memorandum"

and a "subscription agreement" to potential clients outlining the investment strategy of Queen City Investments. In reality, these strategies were meaningless because **GALEMMO** invested only a small amount of the money that he received from clients, using the vast majority of the money to pay investors and his own personal expenses.

To persuade individuals to invest with him, **GALEMMO** provided promotional materials to potential investors. These promotion materials falsely stated that the percentage of returns for Queen City Investments was 17.15% in 2008, 32.35% in 2009, 40.81% in 2010, 30.12% in 2011, and 32.64% in 2012. The promotional materials further compared Queen City Investment's performance to the S & P 500 reported gains in these same years, -38.49% in 2008, 23.45% in 2009, 12.78% in 2010, 0% in 2011 and 12.31% in 2012, falsely representing that Queen City Investment's returns for the same period was much higher. Some promotional materials also noted that the "[f]und was established in 2001 and has averaged over 30% returns over the past 7 years." **GALEMMO** knew these representations were false, because among other things, he failed to invest clients' money as promised. Notwithstanding his promises to the contrary, **GALEMMO** operated a fraudulent investment scheme in which **GALEMMO** used clients' money to pay other investors and to pay his own personal expenses, rather than invest the funds as promised.

The materials that **GALEMMO** provided to investors and potential investors falsely represented that the fund was routinely audited. For example, the "confidential business overview" that **GALEMMO** provided to potential investors listed a specific audit firm used by the fund, when in fact, the audit firm had not audited the company since 2003 and **GALEMMO** had no continuing relationship with the audit firm. In addition, the operating agreement that **GALEMMO** provided to investors falsely indicated that investors would receive annual, financial statements that had been independently audited.

**GALEMMO** falsely told investors and potential investors that their funds were invested in stocks, bonds, futures, and commodities. From time to time, **GALEMMO** even falsely identified specific stocks that the fund had bought and/or sold. For example, in February 2010, **GALEMMO** sent an email to his clients to provide "a quick synopsis of why we had such a high return in January." The email falsely stated that "65-70% of our positions in these 5 stocks from the previous year were sold in early January (for tax purposes). Haliburton HAL, Teva Pharmaceutical Industries TEVA, Apple AAPL, Goldman Sachs GS, Amazon.com AMZN. Those large gains were then credited for January 2010 along with the outside PUT position in Goldman Sachs and the outright short position on Amazon.com. Those were the biggest contributing factors in the high return." In reality, **GALEMMO** had not invested in or sold any of these stocks and did not have any trading accounts at this time. The "high return" in January 2010 was completely fictitious.

Likewise, on or about August 8, 2011, in the Southern District of Ohio, the defendant, **GLEN GALEMMO**, did knowingly transmit and caused to be transmitted in interstate commerce an email communication to investors falsely representing that the fund was "fine" despite the current market status, explaining that he sold 10% of "our positions" and that "the fund was protected by our long position in the vix index," when, in fact, the fund was actually

11

depleted and **GALEMMO** had invested virtually none of the investor money that he had received.

**GALEMMO** sent updates to his clients via email or mail regarding their investments. These communications persuaded clients to continue investing with **GALEMMO** by falsely representing that the fund was performing well. For example, in March 2011, to assuage fears concerning the market's volatility, and to encourage clients to continue investing, **GALEMMO** emailed his clients that "[d]espite the recent events around the world, we have held strong and steady. The fund is positioned for the current downturn. . . . Through these turbulent times, the fund will be managed very conservatively to avoid any major draw downs on fund performance." Contrary to **GALEMMO's** email, the fund was underwater and contained virtually no money. Furthermore, **GALEMMO** did not have any trading accounts open at this time.

**GALEMMO** created a business environment to generate the impression of a legitimate investment business in which client funds were actively invested as promised to conceal the fact that no such business was being conducted. For example, in 2012, **GALEMMO** purchased 2230 Park Avenue, Cincinnati, Ohio and moved his business operations to that location. Investor money was used to renovate the business and furnish the office. **GALEMMO** outfitted his office with over ten (10) large computer screens to give investors the impression that he was constantly monitoring the market. **GALEMMO** also created fictitious trading account statements from Goldman Sachs and Lightspeed Trading, which showed account balances of $100,462,491.26 and $83,652,314.26, respectively. **GALEMMO** maintained these statements in his office and these statements were shown to investors. In truth and fact, the Goldman Sachs and Lightspeed Trading account statements were completely fictitious, as Queen City Investments did not even have trading accounts open with these companies for the time period covered by the statements.

From 2006 to July 2013, **GALEMMO** received approximately $87 million cumulatively from individual investors, trusts, charitable organizations, and retirement accounts. During this time period, **GALEMMO** also received approximately $29 million from some of these investors in the form of short term loans. **GALEMMO** received these funds through interstate wire transfers and through mailings delivered by the United States Postal Service. The vast majority of these funds were never invested in anything. Rather, the funds were paid to other investors in the form of principle and/or interest payments or spent by **GALEMMO** to finance other businesses or pay for personal expenses.

For example, Investor A invested in **GALEMMO's** hedge fund and opened an IRA account with **GALEMMO**. In or about late April 2012, Investor A requested a withdrawal from **GALEMMO** of a portion of the money that Investor A had invested with **GALEMMO**. The request was for $1,500,000. **GALEMMO** did not have the $1,500,000 that Investor A had requested. Between April 30, 2012 and May 1, 2012 (both dates being approximate), **GALEMMO** received deposits from eight (8) other investors, totaling $1,500,000. The deposits were deposited into the QFC, LLC account X4670. On or about May 1, 2012, **GALEMMO** then caused $1,300,000 to be wired from QFC, LLC account X4670 to Investor A and $30,000 to be

12

wired to Investor B. A day later, after depositing additional funds into the QFC, LLC account X4670 (approximately $150,000 from another investor), GALEMMO caused an additional $200,000 to be wired to Investor A, totaling the $1,500,000 that Investor A had requested to withdraw from the fund. When GALEMMO caused the $1,500,000 to be wired to Investor A, he knew that the money he was wiring were deposits from other investors, that is proceeds of his illegal investment scheme. GALEMMO wired the $1,500,000 with the intent to conceal or disguise the nature and source of the funds being wired to Investor A.

To induce investors to continue to invest with him, GALEMMO mailed or emailed monthly statements to investors purporting to show clients their account balances. To create the monthly statements, each client's principal investment balance was merely multiplied by a fictitious percentage of return, consistent with the returns that GALEMMO had promised to his clients. The statements were false, showing positive account balances and fictitious earnings, when in fact, the money had not been invested as promised. For example, GALEMMO issued account statements for approximately 260 different investment accounts for the month of April 2013 reporting that these accounts held a total of approximately $109 million. In fact, Queen City Investments held only a small fraction of that balance on behalf of clients. Based upon these fictitious earnings reported in the fraudulent statements, the investors continued to invest more with GALEMMO and referred other investors to GALEMMO. GALEMMO also caused Schedule K-1's to be issued to investors for tax purposes, which reported fictitious gains. Investors relied on these documents to file their tax returns and paid taxes on the fictitious gains reported to them.

In addition, GALEMMO persuaded some investors to roll over their IRAs or 401K accounts (hereinafter "retirement accounts") to Queen City Investments through an IRA custodian firm such as Millennium Trust Company or Pensco Trust Company. Investors sent funds to Millennium and Pensco to deposit into their retirement accounts and Millennium and Pensco then passed the funds onto GALEMMO to invest. GALEMMO then provided information about the retirement account balances to Millennium and Pensco, which Millennium and Pensco relied upon to issue quarterly statements to investors. The account balance information that GALEMMO provided to Millennium and Pensco, and which they relied upon to issue quarterly statements to investors, was false. These fraudulent quarterly statements lulled investors into a false sense of security that their retirement accounts were safe and earning profits under GALEMMO, encouraging them to continue investing with GALEMMO.

Besides using investor money to pay other investors, GALEMMO used investor money to pay for the mortgage on his home, to purchase his office building and vacation condominium, to purchase vehicles for himself and family members, to pay for expenses incurred by the sports complexes he operated, private school tuition for his children, and assorted personal expenses directly out of the Queen City Investments bank accounts.

GALEMMO's investment scheme involved more than 50 victims but less than 250 victims. The loss amount resulting from GALEMMO's investment scheme exceeded $7,000,000 but was less than $20,000,000.

13

Proceeds from the investment scheme, that is investor money, was used to purchase the following property or fund the following accounts, which the defendant agrees are subject to forfeiture:

a.      Real property known and numbered as 2230 Park Avenue, Cincinnati, Hamilton County, Ohio 45206 with all appurtenances, improvements, and attachments thereon;

b.      The Contents of US Bank Account x5618 in the name of Queen City Investment Fund II ("US Bank x5618") in the amount of Four Hundred Thirteen Dollars and Ninety-Eight Cents ($413.98);

c.      The Contents of US Bank Account x8448, in the name of Queen City Holdings, LLC, ("US Bank x8448"), in the amount of Three Hundred Fifty-Two Dollars and Sixty-Four Cents ($352.64);

d.      The Contents of US Bank Account x4670, in the name of QFC, LLC, ("US Bank x4670") in the amount of Four Hundred Twenty-four Thousand Two Hundred Thirty-eight Dollars and Three Cents ($424,238.03);

e.      The Contents of Keybank Account x5922, in the name of Glen and Kristine Galemmo, ("Keybank x5922") in the amount of Thirty-Six Thousand Fifty-Nine Dollars and Twenty Cents ($36,059.20);

f.      The Contents of Dorman Trading Account x633, in the name of QFC, LLC, ("Dorman x633") in the amount of Ten Thousand Seven Hundred Seventy-Two Dollars and Thirty-Six Cents ($10,772.36);

g.      The Contents of Dorman Trading Account x695, in the name of QFC, LLC, ("Dorman x695") in the amount of Five Thousand Dollars ($5,000.00);

h.      The Contents of Dorman Trading Account x696, in the name of QFC, LLC, ("Dorman x696") in the amount of One Hundred Ninety-Two Thousand Four Hundred Fifty Dollars and Twenty-Five Cents ($192,450.25);

i.      The Contents of Interactive Brokers, LLC Account x016, in the name of QFC, LLC, ("Interactive x016") in the amount of Five Hundred Fourteen Thousand One Hundred Seventy-Six Dollars and Sixty-Five Cents ($514,176.65);

j.      The Contents of Interactive Brokers, LLC Account x438, in the name of QFC, LLC, ("Interactive x438") in the amount of One Thousand Seven Hundred Sixty Six Dollars and Thirty-Five Cents ($1,766.35);

14

k.  Real property known and numbered as 1849 Madison Avenue, Cincinnati, Hamilton County, Ohio 45206 with all appurtenances, improvements, and attachments thereon;

l.  Real property known and numbered as 6000 Royal Marco Way, Unit 454, Marco Island, Florida 34145 with all appurtenances, improvements, and attachments thereon;

m.  The Contents of Key Bank Account X5628 in the name of QC Power Strategies Fund, LLC ("Key Bank X5628") in the amount of Four Hundred Forty Thousand Three Hundred Seventy Dollars and Seventy-Eight Cents ($440,370.78);

n.  A 2007 GMC Yukon XL, VIN 1GKFK66897J236949, titled to Kristine Galemmo;

o.  A 2007 GMC Acadia, VIN 1GKER23787J159616, titled to Kristine Galemmo;

p.  A 2004 Nissan 350Z, VIN JN1AZ36A04M251517, titled to Jones-Morris Group, LLC;

q.  A 2012 Audi A8, VIN WAURVAFD1CN017564, titled to QFC, LLC;

r.  A 2013 Toyota Highlander, VIN 5TDDK3EH2DS194089, titled to Kristine Galemmo;

s.  The Contents of First Citizens Bank Account X1609 in the name of Kristine Galemmo in the amount of One Hundred Two Thousand Twenty-Six Dollars and Ninety-Two Cents ($102,026.92); and

t.  The Contents of First Citizens Bank Account X3209 in the name of Kristine Galemmo in the amount of Twelve Thousand Three Dollars and Two Cents ($12,003.02).

I have read the statement of facts, and have carefully reviewed it with my attorney. I acknowledge that it is true and correct.

_12/15/13_
Date

_____
GLEN GALEMMO
Defendant

15

I am Glen Galemmo's attorney.   I have carefully reviewed the statement of facts with him.

_____
Date 1/16/13

_____
BENJAMIN G. DUSING, ESQ.
Counsel for GLEN GALEMMO

16

# Exhibit B

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

JOHN CAPANNARI, et al.,

       Plaintiffs,

    Vs.         CASE NO. 1:13-CV-883

GLEN GALEMMO, et al.,

       Defendants.

* * *

COURT OF COMMON PLEAS
HAMILTON COUNTY, OHIO

IBRAHIMA BAH, et al.,

       Plaintiffs,

    Vs.         CASE NO. A1305050

GLEN GALEMMO, et al.,

       Defendants.

VOLUME I

Deposition of GLEN GALEMMO, a
defendant herein, called by the plaintiffs for
examination pursuant to the Rules of Civil
Procedure, taken before me, Patti Stachler,
RMR, CRR, CLR, CME, a Notary Public within and
for the State of Ohio, at the Offices of
Strauss Troy, LPA, 150 East Fourth Street,
Suite 150, Cincinnati, Ohio, on September 30,
2014, at 9:06 a.m.

* * *

1      Q.    Or where your sister-in-law was an

2  investor?

3      A.    Correct.

4      Q.    Or where your father and

5  mother-in-law's trust was an investor?

6      A.    Correct.

7      Q.    But going back to your father's

8  account statements and your brother's account

9  statements, you think that anything prior to

10  2007 would be an accurate account statement; is

11  that fair?

12      A.    Based on the percentage gains are

13  what you're --

14      Q.    Everything.  I'm just saying, is

15  it accurate, you know, at that point in time?

16      A.    I believe so.

17      Q.    Was the fund insolvent at the

18  point in time that you extended the Morrow

19  loans?

20      A.    No.

21      Q.    At what point in time did the fund

22  become insolvent, if --

23      A.    When I made the returns, you know,

24  go -- you know, when there was basically no

25  money being made in 2008, I think we did like

1  32 percent.  That was a problem.

2          Q.    By a problem, you had overinflated

3  to investors what they had actually made?

4          A.    Yeah.

5          Q.    And you weren't able to pay it?

6          A.    Correct.

7          Q.    You think that was sometime in

8  2008, sir?

9          A.    Yes.  But the Morrow loans that

10  ended up reaching as high as $800,000 caused

11  severe problem because I only had, you know,

12  two to four, $5 million max at that time.

13          Q.    Okay.  And you think they

14  eventually paid it back?

15          A.    They paid it back.

16          Q.    Did they pay back all the interest

17  that was due on those notes?

18          A.    Yes.

19          Q.    Okay.  I'm going to talk to you

20  about On-Ramp.  You talked about a $700,000

21  investment in On-Ramp?

22          A.    Correct.

23          Q.    My understanding is -- and you've

24  told us that came from two different people.

25  It came from -- one of whom is your father,

1    assets?

2              A.    Correct.

3              Q.    There was a cashier's check that

4    she was given about the same time, right?

5              A.    Correct.

6              Q.    So cash was transferred to her as

7    well in July 2013, right?

8              A.    Correct.

9              Q.    That was for the same reason?

10             A.    The reason it was transferred to

11   her, so there was money to eat and live off of,

12   correct.

13             Q.    So that the creditors would not

14   take that money and your family could continue

15   to eat, right?

16             A.    Correct.    May I add something?

17             Q.    Absolutely.

18             A.    But all that money was taken.

19             Q.    Okay.    I believe you testified

20   yesterday that the fund was insolvent in 2008;

21   is that correct?

22             A.    I believe I said yesterday in 2008

23   if everybody asked for their money back, I

24   could not give it to them.    Let's put it --

25             Q.    So in 2008, the fund owed more

1   than it had in assets; is that right?

2        A.    Correct.

3        Q.    And at all times after 2008, that

4   would be correct, right?

5        A.    Correct.

6            (Plaintiffs' Exhibit 17 was marked

7            for identification.)

8   BY MR. REYNOLDS:

9        Q.    Mr. Galemmo, you've been handed

10  Plaintiffs' Exhibit 17.  Have you ever seen

11  that before?

12       A.    No.

13       Q.    It appears to be financial

14  statements for Queen City Investment, Inc. and

15  subsidiaries, right?

16       A.    Queen City Investment was -- this

17  is not my company.

18       Q.    That's what I'm getting at.  This

19  is not your company, right?

20       A.    Yeah.  That's the company on the

21  West Coast with the same name.

22       Q.    Did you ever give these financial

23  statements to any investor or potential

24  investor?

25       A.    Absolutely not.

# Exhibit C



# GIG

## THE GALEMMO INVESTMENT GROUP

January 6, 2000
Steve W Smith
6803 Salem Road
Cincinnati, OH 45208

Mr. Smith

Attached is the deposit confirmation processed on January 6, 2000 in the amount of $30,0000.00 to the Galemmo Investment Group.

The total of your account is $30,000.00

Sincerely,

Glen A. Galemmo
CEO- President

**CONFIDENTIAL**



## KeyBank.

### Transaction Receipt

The transaction for which this receipt is issued is subject to charges, regulations, and practices of KeyCorp in force at the time of this transaction. Retain this receipt until verified with your statement of account.

The office, teller and transaction number, date, type and amount of your transaction are shown above.

FORM NO. 44-0608 REV 1994

CONFIDENTIAL

QC08332


**Business Statement**
Account Number:
1 301 1532 4670

Statement Period:
Sep 4, 2012
through
Sep 30, 2012

Page 3 of 13

QFC, LLC
1716 MADISON RD
CINCINNATI OH 45206-1817

## FREE SMALL BUSINESS CHECKING (CONTINUED)
U.S. Bank National Association                                        Account Number 1-301-1532-4670

### Other Withdrawals (continued)

| Date | Description of Transaction | | | Ref Number | Amount |
|------|---------------------------|---|---|-----------|--------|
| Sep 14 | Wire Debit REF002628 | WELLS SF | 120914028391 | | 30,000.00- |
| | BNF=GARY FORTIER | | | | |
| Sep 17 | Analysis Service Charge | | | 1700000000 | 875.45- |
| Sep 17 | Internet Banking Transfer | To Account 145806766542 | | | 6,000.00- |
| Sep 17 | Wire Debit REF002268 | WELLS SF | 120917024408 | | 30,000.00- |
| | BNF=GARY FORTIER | | | | |
| Sep 17 | Wire Debit REF000806 | BK AMER NYC | 120917009843 | | 200,000.00- |
| | BNF=LUTHER SHELBY | | | | |
| Sep 17 | Wire Debit REF002268 | HUNT COL | 120917024603 | | 225,000.00- |
| | BNF=STEVE SMITH | | | | |
| Sep 18 | Internet Banking Transfer | To Account 145806766542 | | | 1,000.00- |
| Sep 18 | Wire Debit REF001146 | WELLS SF | 120918013375 | | 30,000.00- |
| | BNF=GARY FORTIER | | | | |
| Sep 18 | Wire Debit REF001097 | WELLS SF | 120918012778 | | 50,000.00- |
| | BNF=MW PARTNERS | | | | |
| Sep 18 | Wire Debit REF000929 | FIFTH CINCINNATI | 120918009862 | | 100,000.00- |
| | BNF=RAYMOND M. STACY | | | | |
| Sep 19 | Internet Banking Transfer | To Account 130116278297 | | | 200.00- |
| Sep 19 | Internet Banking Transfer | To Account 145806766542 | | | 2,000.00- |
| Sep 20 | Wire Debit REF000933 | CITIBANK OF NEW YO. 120920010971 | | | 25,000.00- |
| | BNF=INTERACTIVE BROKERS | LLC | | | |
| Sep 20 | Wire Debit REF001044 | HARRIS CHICAGO | 120920010769 | | 100,000.00- |
| | BNF=DORMAN TRADING, LLC | | | | |
| Sep 24 | Internet Banking Transfer | To Account 145806766542 | | | 3,000.00- |
| Sep 25 | Internet Banking Transfer | To Account 145806766542 | | | 2,000.00- |
| Sep 26 | Internet Banking Transfer | To Account 145806766542 | | | 4,500.00- |
| Sep 26 | Electronic Funds Transfer | To Account 00245085618 | | | 300,000.00- |
| Sep 28 | Wire Debit REF004177 | CITIBANK OAKLAND | 120928065562 | | 10,000.00- |
| | BNF=RICHARD LOW | | | | |
| Sep 28 | Wire Debit REF004163 | E TRADE ARLINGTON | 120928065428 | | 10,000.00- |
| | BNF=ROB MORRIS | | | | |
| Sep 28 | Wire Debit REF001916 | FIFTH CINCINNATI | 120928034335 | | 20,000.00- |
| | BNF=ELIZABETH MURRAY | | | | |
| Sep 28 | Electronic Funds Transfer | To Account 00245085618 | | | 90,000.00- |
| Sep 28 | Wire Debit REF001771 | BK AMER NYC | 120928025338 | | 200,000.00- |
| | BNF=LUTHER SHELBY | | | | |

| | | | Total Other Withdrawals | $ | 2,582,005.41- |
|---|---|---|---|---|---|

### Checks Presented Conventionally

| Check | Date | Ref Number | Amount | Check | Date | Ref Number | Amount |
|-------|------|-----------|--------|-------|------|-----------|--------|
| 2221 | Sep 4 | 9193588374 | 5,000.00 | 2245 | Sep 13 | 8950138932 | 5,000.00 |
| 2222 | Sep 5 | 8996994939 | 4,200.00 | 2246 | Sep 11 | 9194914486 | 110.00 |
| 2228* | Sep 5 | 8996393972 | 6,000.00 | 2247 | Sep 11 | 8892140288 | 44,000.00 |
| 2230* | Sep 12 | 8892914344 | 8,000.00 | 2248 | Sep 13 | 9492915235 | 20,000.00 |
| 2231 | Sep 11 | 8892117675 | 1,621.87 | 2249 | Sep 12 | 8892569561 | 20,000.00 |
| 2232 | Sep 7 | 8998304061 | 300,000.00 | 2250 | Sep 13 | 8893600148 | 11,000.00 |
| 2233 | Sep 7 | 9250197932 | 14,500.00 | 2251 | Sep 12 | 8892915822 | 10,000.00 |
| 2235* | Sep 10 | 9194736924 | 15,000.00 | 2252 | Sep 14 | 8893949561 | 32,263.00 |
| 2236 | Sep 7 | 8998722542 | 5,000.00 | 2253 | Sep 13 | 8950159924 | 9,947.23 |
| 2237 | Sep 11 | 9194955439 | 5,000.00 | 2254 | Sep 14 | 8893948273 | 247.14 |
| 2238 | Sep 10 | 9194708797 | 7,000.00 | 2255 | Sep 14 | 8893948274 | 567.13 |
| 2240* | Sep 11 | 8891635035 | 250,000.00 | 2256 | Sep 17 | 8050040284 | 2,967.64 |
| 2242* | Sep 13 | 8950138933 | 1,298.00 | 2257 | Sep 13 | 8893595182 | 4,000.00 |
| 2243 | Sep 13 | 8950138934 | 1,000.00 | 2258 | Sep 13 | 9195267758 | 15,000.00 |
| 2244 | Sep 13 | 8950138935 | 800.00 | 2259 | Sep 13 | 8893600146 | 10,000.00 |



**US bank**

QFC, LLC
1716 MADISON RD
CINCINNATI OH 45206-1817

# Business Statement

Account Number:
1 301 1532 4670

Statement Period:
Mar 1, 2012.
through
Mar 31, 2012

Page 2 of 10



| FREE SMALL BUSINESS CHECKING | | (CONTINUED) |
|---|---|---|

Account Number 1-301-1532-4670

U.S. Bank National Association

## Other Withdrawals

| Date | Description of Transaction | | Ref Number | $ | Amount |
|---|---|---|---|---|---|
| Mar 1 | Wire Debit REF003459 | BK AMER SF 120301032186 | | | 45,000.00- |
| | BNF=MICHAEL WILLNER | | | | |
| Mar 1 | Wire Debit INTERNAL | US BANK 120301033128 | | | 315,000.00- |
| | BNF=KEVIN L EICKMANN | 8000 KROGER FARM RD | | | 100,000.00- |
| Mar 2 | Wire Debit REF002465 | BK AMER NYC 120302024214 | | | |
| | BNF=LUTHER SHELBY | | | | |
| Mar 6 | Wire Debit REF000583 | BK AMER NYC 120306006705 | | | 3,500.00- |
| | BNF=LYNN NELSEN | | | | |
| Mar 6 | Wire Debit REF000538 | EVERBANK JACKSONVI 120306006656 | | | 5,000.00- |
| | BNF=YUKI FUKUYAMA | | | | |
| Mar 6 | Wire Debit REF000530 | BK AMER NYC 120306006776 | | | 7,000.00- |
| | BNF=OCEAN ADVENTURE | PROGRAMS INC | | | |
| Mar 6 | Internet Banking Transfer | To Account 145806766542 | | | 10,000.00- |
| Mar 6 | Wire Debit REF000534 | BK AMER SF 120306006819 | | | 12,000.00- |
| | BNF=LAWRENCE HENSLEY | | | | |
| Mar 6 | Wire Debit REF000533 | SARATOGA BK SARATO 120306006601 | | | 15,000.00- |
| | BNF=IRWIN COHEN | | | | |
| Mar 6 | Wire Debit REF001959 | CITIBANK OF NEW YO 120306019819 | | | 50,000.00- |
| | BNF=INTERACTIVE BROKERS, LLC | | | | |
| Mar 6 | Wire Debit REF000714 | HUNT COL 120306006885 | | | 130,000.00- |
| | BNF=STEVE SMITH | | | | |
| Mar 7 | Wire Debit REF000477 | BK AMER SF 120307006277 | | | 4,200.00- |
| | BNF=MICHAEL WILLNER | | | | |
| Mar 8 | Internet Banking Transfer | To Account 145806766542 | | | 136,500.00- |
| Mar 9 | Wire Debit REF002707 | E TRADE ARLINGTON 120309028014 | | | 10,000.00- |
| | BNF=ROB MORRIS | | | | |
| Mar 12 | Wire Debit REF000735 | GOLDEN ONE CU SACR 120312008811 | | | 5,000.00- |
| | BNF=SHARON SAMPSON | | | | |
| Mar 13 | Returned Check(s) Charge | | 8897724129 | | 33.00- |
| Mar 13 | Internet Banking Transfer | To Account 145806766542 | | | 5,000.00- |
| Mar 13 | Wire Debit REF002213 | BK AMER SF 120313023386 | | | 10,000.00- |
| | BNF=MICHAEL WILLNER | | | | |
| Mar 14 | Analysis Service Charge | | 1400000000 | | 488.13- |
| Mar 14 | Internet Banking Payment | To Reserve Line | | | 1,501.79- |
| Mar 14 | Internet Banking Payment | To Reserve Line | | | 3,003.59- |
| Mar 14 | Wire Debit REF001299 | BK AMER SF 120314014651 | | | 4,100.00- |
| | BNF=MICHAEL WILLNER | | | | |
| Mar 14 | Wire Debit REF001396 | RANDOLPH ASHEBORO 120314015740 | | | 5,000.00- |
| | BNF=TODD RICHARDSON | | | | |
| Mar 14 | Wire Debit REF001265 | CITIBANK OAKLAND 120314014528 | | | 6,600.00- |
| | BNF=RICHARD LOW | | | | |
| Mar 14 | Internet Banking Transfer | To Account 145806766542 | | | 10,000.00- |
| Mar 14 | Wire Debit REF001381 | RANDOLPH ASHEBORO 120314015500 | | | 50,000.00- |
| | BNF=TODD RICHARDSON | | | | |
| Mar 15 | Internet Banking Transfer | To Account 145806766542 | | | 36,000.00- |
| Mar 20 | Wire Debit REF000491 | ALLY BANK OF MIDVA 120320066812 | | | 2,000.00- |
| | BNF=RICHARD D. MORRIS | | | | |
| Mar 21 | Electronic Withdrawal | From Ocwen Loan Servi | | | 10.00- |
| | REF=12081007463233 N | 3510035452MTG PMT 34359570 | | | |
| Mar 21 | Electronic Withdrawal | To AT&T | | | 235.17- |
| | REF=12081007555323 N | 9991440000PAYMENT 188035646360GLR | | | |
| Mar 21 | Electronic Withdrawal | To AT&T | | | 240.17- |
| | REF=12081007555322 N | 9991440000PAYMENT 188035646360GLR | | | |
| Mar 21 | Electronic Withdrawal | To TIMEWARNERKETTER | | | 550.00- |
| | REF=12081007527195 N | 1133666692BANK DRAFT003417056201001 | | | |
| Mar 21 | Internet Banking Transfer | To Account 145806766542 | | | 1,000.00- |



**Business Statement**

Account Number:
1 301 1532 4670
Statement Period:
Nov 1, 2011
through
Nov 30, 2011

Page 1 of 8

P.O. Box 1800
Saint Paul, Minnesota 55101-0800

2781     IMG                          Y     ST01

000002839 2 AT 0.490 106481358998698 P
QFC, LLC
1716 MADISON RD
CINCINNATI OH 45206-1817



☎                          *To Contact U.S. Bank*

**24-Hour Business
Solutions:**                          1-800-673-3555

**Telecommunications Device
for the Deaf:**                          1-800-685-5065

**Internet:**                          usbank.com

---

## FREE SMALL BUSINESS CHECKING                                   *Member FDIC*

U.S. Bank National Association                          Account Number 1-301-1532-4670

### Account Summary

| | # Items | | |
|---|---|---|---|
| Beginning Balance on Nov 1 | | $ | 49,531.15 |
| Customer Deposits | 8 | | 1,474,472.00 |
| Other Deposits | 3 | | 202,000.00 |
| Other Withdrawals | 29 | | 926,209.68- |
| Checks Paid | 33 | | 784,228.84- |
| **Ending Balance on Nov 30, 2011** | | **$** | **15,564.63** |

---

### Customer Deposits

| Number | Date | Ref Number | Amount | Number | Date | Ref Number | Amount |
|---|---|---|---|---|---|---|---|
| | Nov 1 | 9790920815 | 55,000.00 | | Nov 8 | 9790748134 | 500,000.00 |
| | Nov 2 | 9792366265 | 34,972.00 | | Nov 16 | 9791262717 | 291,500.00 |
| | Nov 3 | 9793617421 | 100,000.00 | | Nov 21 | 9797085453 | 293,000.00 |
| | Nov 4 | 9795120164 | 100,000.00 | | Nov 28 | 9795221006 | 100,000.00 |
| | | | | | **Total Customer Deposits** | **$** | **1,474,472.00** |

---

### Other Deposits

| Date | Description of Transaction | | Ref Number | | Amount |
|---|---|---|---|---|---|
| Nov 1 | Internet Banking Transfer | From Account 130112948448 | | $ | 100,000.00 |
| Nov 18 | Internet Banking Transfer | From Account 130112948448 | | | 100,000.00 |
| Nov 22 | Internet Banking Transfer | From Account 145806766542 | | | 2,000.00 |
| | | **Total Other Deposits** | | **$** | **202,000.00** |

---

### Other Withdrawals

| Date | Description of Transaction | | | Ref Number | | Amount |
|---|---|---|---|---|---|---|
| Nov 1 | Wire Debit REF004233 | BK AMER SF | 111101034497 | | $ | 42,000.00- |
| | BNF=MICHAEL WILLNER | | | | | |
| Nov 1 | Wire Debit REF004221 | PNC BANK NA OF CLE | 111101034338 | | | 80,000.00- |
| | BNF=STEVE SCHUHOLZ | | | | | |
| Nov 2 | Wire Debit INTERNAL | US BANK | 111102008066 | | | 10,000.00- |
| | BNF=MARY A GALEMMO 301 | TRILLIUM LN | | | | |
| Nov 2 | Wire Debit REF001216 | WELLS SF | 111102013035 | | | 50,000.00- |
| | BNF=LW CAPITAL CORP | | | | | |
| Nov 4 | Internet Banking Transfer | To Account 145806766542 | | | | 21,000.00- |
| Nov 7 | Wire Debit REF000564 | BK AMER NYC | 111107006606 | | | 3,500.00- |
| | BNF=LYNN NELSEN | | | | | |
| Nov 7 | Internet Banking Transfer | To Account 145806766542 | | | | 5,000.00- |
| Nov 7 | Wire Debit REF000802 | BK AMER NYC | 111107007212 | | | 5,000.00- |
| | BNF=OCEAN ADVENTURE | PROGRAMS INC | | | | |
| Nov 7 | Wire Debit REF000638 | FIFTH CINCINNATI | 111107007565 | | | 6,000.00- |
| | BNF=GEORGE DAVID | | | | | |
| Nov 7 | Wire Debit REF000613 | HUNT COL | 111107007321 | | | 25,000.00- |
| | BNF=STEVE SMITH | | | | | |
| Nov 8 | Internet Banking Transfer | To Account 130111319518 | | | | 12.00- |

 **US bank.**     QFC, LLC
1716 MADISON RD
CINCINNATI OH 45206-1817

**Business Statement**
Account Number:
1 301 1532 4670

Statement Period:
Mar 1, 2011
through
Mar 31, 2011

Page 2 of 4



## FREE SMALL BUSINESS CHECKING      (CONTINUED)

U.S. Bank National Association      **Account Number 1-301-1532-4670**

### Other Withdrawals (continued)

| Date | Description of Transaction | | Ref Number | Amount |
|------|---------------------------|---|-----------|--------|
| Mar 3 | Wire Debit REF002065 | BK AMER SF 110303021131 | | 35,000.00- |
| | BNF=MICHAEL WILLNER | | | |
| Mar 4 | Wire Debit REF002312 | BK AMER NYC 110304024102 | | 3,000.00- |
| | BNF=OCEAN ADVENTURE | PROGRAMS INC | | |
| Mar 7 | Wire Debit REF002313 | HUNT COL 110307024466 | | 15,000.00- |
| | BNF=STEVE SMITH | | | |
| Mar 7 | Wire Debit REF002321 | BK AMER SF 110307024417 | | 15,000.00- |
| | BNF=LARRY HENSLEY | | | |
| Mar 9 | Electronic Withdrawal | From DUKE ENERGY OH | | 1,272.72- |
| | REF=11068003473685 N | 534690001 WEB PAY 01531673030811 | | |
| Mar 10 | Electronic Withdrawal | From FEDERAL EXPRESS | | 274.34- |
| | REF=11068007187562 N | 1710427007DEBIT MMA06290744 | | |
| Mar 10 | Electronic Withdrawal | From CINTI BELL TELE | | 998.85- |
| | REF=11068006353756 N | 1310241390INTBILLPMT5139240990956 | | |
| Mar 10 | Wire Debit REF002404 | JPMCHASE NYC 110310024356 | | 5,000.00- |
| | BNF=IRWIN COHEN | | | |
| Mar 11 | Electronic Withdrawal | To TIMEWARNERKETTER | | 543.25- |
| | REF=11069012359888 N | 1133666692BANK DRAFT003417056201001 | | |
| Mar 14 | Analysis Service Charge | | 1400000000 | 316.95- |
| Mar 15 | Electronic Withdrawal | From Ocwen Loan Servi | | 10.00- |
| | REF=11074007964100 N | 3510035452MTG PMT 34359570 | | |
| Mar 15 | Electronic Withdrawal | From Ocwen Loan Servi | | 1,264.00- |
| | REF=11074007964087 N | 2510035452MTG PMT 34359570 | | |
| Mar 18 | Wire Debit REF002360 | SUNTRUST ATL 110318025353 | | 149,000.00- |
| | BNF=IRA STEIN | | | |
| Mar 18 | Electronic Funds Transfer | To Account 00245085618 | | 150,000.00- |
| Mar 21 | Electronic Withdrawal | From FEDERAL EXPRESS | | 150.82- |
| | REF=11080009573923 N | 1710427007DEBIT MMA06340599 | | |
| Mar 22 | Wire Debit REF001654 | BK AMER SF 110322017630 | | 11,700.00- |
| | BNF=MICHAEL WILLNER | | | |
| Mar 23 | Electronic Funds Transfer | To Account 00245085618 | | 174,000.00- |
| Mar 24 | Internet Banking Transfer | To Account 130111901927 | | 550.00- |
| Mar 24 | Wire Debit REF000567 | BK AMER NYC 110324006846 | | 50,000.00- |
| | BNF=LYNN NELSEN | | | |
| Mar 28 | Electronic Withdrawal | From MCI WORLDCOM COM | | 162.21- |
| | REF=11087008794099 N | 3132745892CLEARTRN0408687446854 | | |
| Mar 31 | Electronic Withdrawal | From FEDERAL EXPRESS | | 149.85- |
| | REF=11089007433045 N | 1710427007DEBIT MMA06400221 | | |

         **Total Other Withdrawals**    $    719,903.88-

### Checks Presented Conventionally

| Check | Date | Ref Number | Amount | Check | Date | Ref Number | Amount |
|-------|------|-----------|--------|-------|------|-----------|--------|
| 1391 | Mar 22 | 8893580880 | 1,050.00 | 1428 | Mar 8 | 9192734233 | 701.84 |
| 1392 | Mar 21 | 8893178444 | 1,000.00 | 1429 | Mar 16 | 8890327530 | 2,856.00 |
| 1393 | Mar 28 | 8896892183 | 10,000.00 | 1430 | Mar 11 | 5128802434 | 130.61 |
| 1394 | Mar 24 | 8895323989 | 1,035.00 | 1431 | Mar 25 | 8896310248 | 538.42 |
| 1395 | Mar 24 | 8895323990 | 85.00 | 1432 | Mar 11 | 4821861909 | 38.34 |
| 1396 | Mar 29 | 9196603407 | 214,600.00 | 1433 | Mar 14 | 8997472771 | 340.00 |
| 1397 | Mar 29 | 9196699926 | 110.00 | 1434 | Mar 14 | 8997472775 | 270.00 |
| 1398 | Mar 31 | 8991036219 | 5,956.79 | 1435 | Mar 9 | 8993788583 | 12,000.00 |
| 1399 | Mar 29 | 9196672103 | 13,000.00 | 1437* | Mar 10 | 9193190599 | 10,000.00 |
| 1423* | Mar 23 | 9391468139 | 1,825.00 | 1438 | Mar 14 | 9193489105 | 110.00 |
| 1425* | Mar 1 | 8896459285 | 9,000.00 | 1439 | Mar 14 | 8997472774 | 255.00 |
| 1426 | Mar 1 | 9191020317 | 2,331.72 | 1440 | Mar 14 | 9097237541 | 10,279.00 |
| 1427 | Mar 7 | 8991520521 | 9,000.00 | 1441 | Mar 9 | 9192998804 | 1,000.00 |



**US bank.**

QFC, LLC
1716 MADISON RD
CINCINNATI OH 45206-1817

**Business Statement**
Account Number:
1 301 1532 4670
Statement Period:
Dec. 1 , 2010
through
Dec. 31, 2010

Page 3 of 5

## FREE SMALL BUSINESS CHECKING                                                      (CONTINUED)

U.S. Bank National Association                                    Account Number  1-301-1532-4670

### Other Withdrawals (continued)

| Date | Description of Transaction | | Ref Number | Amount |
|---|---|---|---|---|
| Dec. 13 | Wire Debit REF002585 | CITIBANK OAKLAND   101213025664 | | 3,500.00- |
| | BNF=RICHARD LOW | | | |
| Dec. 14 | Analysis Service Charge | | 1400000000 | 193.92- |
| Dec. 15 | Wire Debit REF001903 | BK AMER SF   101215020149 | | 21,600.00- |
| | BNF=MICHAEL WILLNER | | | |
| Dec. 17 | Wire Debit REF002015 | HUNT COL   101217020282 | | 15,000.00- |
| | BNF=STEVEN SMITH | | | |
| Dec. 20 | Wire Debit INTERNAL | US BANK   101220032413 | | 75,000.00- |
| | BNF=KEVIN L EICKMANN | 8000 KROGER FARM RD | | |
| Dec. 21 | Electronic Funds Transfer | To Account 00245085618 | | 10,000.00- |
| Dec. 21 | Wire Debit REF000791 | FIFTH CINCINNATI   101221007272 | | 99,000.00- |
| | BNF=DENNIS O'LEARY | | | |
| Dec. 22 | Wire Debit INTERNAL | US BANK   101222025691 | | 125,000.00- |
| | BNF=KEVIN L EICKMANN | 8000 KROGER FARM RD | | |
| Dec. 23 | Wire Debit REF000591 | FIFTH CINCINNATI   101223006540 | | 10,000.00- |
| | BNF=STEVE WILFSON | | | |
| Dec. 23 | Wire Debit REF001620 | WACHOVIA CHARLOTTE 101223015005 | | 30,000.00- |
| | BNF=ELEVATED RESOURCES | | | |
| Dec. 24 | Wire Debit REF000317 | WACHOVIA CHARLOTTE 101224004351 | | 20,000.00- |
| | BNF=ELEVATED RESOURCES | | | |
| Dec. 27 | Wire Debit REF002591 | FIFTH CINCINNATI   101227022863 | | 1,200.00- |
| | BNF=DENNIS O'LEARY | | | |
| Dec. 27 | Wire Debit REF002555 | BK AMER SF   101227022707 | | 10,000.00- |
| | BNF=MICHAEL WILLNER | | | |
| Dec. 29 | Internet Banking Transfer | To Account 145806766542 | | 2,000.00- |
| Dec. 29 | Internet Banking Transfer | To Account 145806766542 | | 5,000.00- |
| Dec. 30 | Electronic Withdrawal | From Ocwen Loan Servi | | 10.00- |
| | REF=10364002779273 N | 3510035452MTG PMT   34359570 | | |
| Dec. 30 | Electronic Withdrawal | From FEDERAL EXPRESS | | 25.74- |
| | REF=10363010618751 N | 1710427007DEBIT   MMA05944552 | | |
| Dec. 30 | Electronic Withdrawal | From FEDERAL EXPRESS | | 57.56- |
| | REF=10363010618753 N | 1710427007DEBIT   MMA05944554 | | |
| Dec. 30 | Electronic Withdrawal | From FEDERAL EXPRESS | | 80.28- |
| | REF=10363010618752 N | 1710427007DEBIT   MMA05944553 | | |
| Dec. 30 | Electronic Withdrawal | From FEDERAL EXPRESS | | 148.40- |
| | REF=10363010618750 N | 1710427007DEBIT   MMA05944551 | | |
| Dec. 30 | Electronic Withdrawal | From DUKE ENERGY OH | | 347.01- |
| | REF=10364002909702 N | 534690001 WEB PAY  01292979122910 | | |
| Dec. 30 | Internet Banking Transfer | To Account 145806766542 | | 1,000.00- |
| Dec. 30 | Electronic Withdrawal | From Ocwen Loan Servi | | 1,284.00- |
| | REF=10364002779276 N | 2510035452MTG PMT  -34359570 | | |
| Dec. 31 | Electronic Withdrawal | From CINTI BELL TELE | | 59.81- |
| | REF=10364004944316 N | 1310241390INTBILLPMT5139240990956 | | |
| Dec. 31 | Electronic Withdrawal | From CINTI BELL TELE | | 100.00- |
| | REF=10364004944312 N | 1310241390INTBILLPMT5139240990956 | | |
| Dec. 31 | Electronic Withdrawal | From CINTI BELL TELE | | 100.00- |
| | REF=10364004944313 N | 1310241390INTBILLPMT5139240990956 | | |
| Dec. 31 | Electronic Withdrawal | From CINTI BELL TELE | | 100.00- |
| | REF=10364004944314 N | 1310241390INTBILLPMT5139240990956 | | |
| Dec. 31 | Electronic Withdrawal | From CINTI BELL TELE | | 100.00- |
| | REF=10364004944315 N | 1310241390INTBILLPMT5139240990956 | | |
| Dec. 31 | Electronic Withdrawal | From CINTI BELL TELE | | 100.00- |
| | REF=10364004944310 N | 1310241390INTBILLPMT5139240990956 | | |

 QFC, LLC
1716 MADISON RD
CINCINNATI OH 45206-1817

**Business Statement**
Account Number:
1 301 1532 4670
Statement Period:
Aug. 2 , 2010
through
Aug. 31, 2010

Page 2 of 4



## FREE SMALL BUSINESS CHECKING (CONTINUED)
U.S. Bank National Association
**Account Number 1-301-1532-4670**

### Other Deposits

| Date | Description of Transaction | | Ref Number | | Amount |
|------|---------------------------|---|-----------|---|--------|
| Aug. 2 | Addition | | 4926662209 | $ | 40,000.00 |
| Aug. 4 | Addition | | 5020800944 | | 45,000.00 |
| Aug. 4 | Addition | | 5127981621 | | 307,000.00 |
| Aug. 5 | Addition | | 4927450846 | | 40,000.00 |
| Aug. 6 | Waived Overdraft Charge | | 9392916533 | | 37.50 |
| Aug. 6 | Addition | | 4927605679 | | 150,000.00 |
| Aug. 10 | Waived Overdraft Charge | | 9090754079 | | 37.50 |
| Aug. 10 | Addition | | 5120185336 | | 15,000.00 |
| Aug. 10 | Internet Banking Transfer | From Account 130112948448 | | | 50,000.00 |
| Aug. 11 | Wire Credit REF007726 | BK AMER NYC 100811018211 | | | 1,000.00 |
| | ORG=QFC, LLC 1716 | MADISON RD | | | |
| Aug. 12 | Internet Banking Transfer | From Account 130112948448 | | | 100,000.00 |
| Aug. 16 | Internet Banking Transfer | From Account 130112948448 | | | 69,000.00 |
| Aug. 18 | Addition | | 4921027050 | | 70,000.00 |
| Aug. 18 | Addition | | 4921027540 | | 100,000.00 |
| Aug. 20 | Wire Credit REF006843 | BK AMER NYC 100820015973 | | | 30,000.00 |
| | ORG=ZACHARY H WILLNER 6 | DAVIS | | | |
| Aug. 24 | Internet Banking Transfer | From Account 130112948448 | | | 198,000.00 |

| | | Total Other Deposits | $ | 1,215,075.00 |
|---|---|---|---|---|

### Other Withdrawals

| Date | Description of Transaction | | Ref Number | | Amount |
|------|---------------------------|---|-----------|---|--------|
| Aug. 2 | Electronic Withdrawal | To MORTGAGE PAYMENT | | $ | 4,874.04- |
| | REF=10214007296525 N | R952318940EFT 1205112631 | | | |
| Aug. 3 | Electronic Withdrawal | From AMERICAN EXPRESS | | | 10,916.04- |
| | REF=10214014745380 N | 0005000008ELEC REMIT 100820263187149 | | | |
| Aug. 3 | Miscellaneous Withdrawal | | 4722118446 | | 75,000.00- |
| Aug. 5 | Wire Debit REF002369 | JPMCHASE NYC 100805021816 | | | 81,000.00- |
| | BNF=IRWIN COHEN | | | | |
| Aug. 6 | Overdraft Charge | | 9392916533 | | 37.50- |
| Aug. 9 | Wire Debit REF002642 | BK AMER SF 100809022326 | | | 10,000.00- |
| | BNF=LARRY HENSLEY | | | | |
| Aug. 9 | Miscellaneous Withdrawal | | 4821102472 | | 15,000.00- |
| Aug. 9 | Wire Debit REF002644 | HUNT COL 100809022128 | | | 25,000.00- |
| | BNF=STEVE SMITH | | | | |
| Aug. 9 | Deposited Item Returned | | 1000109449 | | 35,000.00- |
| Aug. 10 | Overdraft Charge | | 9090754079 | | 37.50- |
| Aug. 10 | Miscellaneous Withdrawal | | 5120181568 | | 35,000.00- |
| Aug. 11 | Internet Banking Transfer | To Account 130111901927 | | | 500.00- |
| Aug. 11 | Internet Banking Transfer | To Account 145806766542 | | | 1,000.00- |
| Aug. 11 | Wire Debit REF001883 | BK AMER SF 100811017743 | | | 1,000.00- |
| | BNF=SHARON SAMPSON | | | | |
| Aug. 11 | Miscellaneous Withdrawal | | 4928579899 | | 36,000.00- |
| Aug. 12 | Wire Debit REF000714 | GOLDEN ONE CU SACR 100812007655 | | | 1,000.00- |
| | BNF=SHARON SAMPSON | | | | |
| Aug. 12 | Customer Withdrawal | | 5120603448 | | 1,500.00- |
| Aug. 12 | Customer Withdrawal | | 5120631297 | | 16,000.00- |
| Aug. 12 | Internet Banking Transfer | To Account 130112948448 | | | 92,000.00- |
| Aug. 13 | Analysis Service Charge | | 1300000000 | | 409.61- |
| Aug. 16 | Wire Debit REF001001 | BK AMER SF 100816013023 | | | 23,000.00- |
| | BNF=MICHAEL WILLNER | | | | |
| Aug. 16 | Internet Banking Transfer | To Account 145806766542 | | | 50,000.00- |
| Aug. 18 | Overdraft Charge | | 9198508712 | | 33.00- |
| Aug. 18 | Internet Banking Transfer | To Account 145806766542 | | | 25,000.00- |
| Aug. 20 | Internet Banking Transfer | To Account 145806766542 | | | 3,000.00- |
| Aug. 20 | Internet Banking Transfer | To Account 145806766542 | | | 3,000.00- |

# GIG

## THE GALEMMO INVESTMENT GROUP

2637 Erie Avenue, Suite 201 ▲ Cincinnati, Ohio 45208
Local: (513)924-0990 ▲ Fax: (513)924-0991 ▲ National Free: 1-877-265-7229

Funds shown on this statement an accumulation of accounts at Lieber and Wessman, Paine Webber, DLJ, and KeyBank. All accounts are SIPC Insured.

Steve W. Smith
6803 Salem Rd
Cincinnati, OH 45230

**Client Statement**

11/01/00 – 11/30/00

|  | | Nov-00 | | Jan-00 To Date | YTD % Return |
|---|---|---|---|---|---|
| **Beginning Value** | $ | 52,693.00 | $ | 30,000.00 | |
| Net Deposit / Withdrawls | | | $ | 10,000.00 | |
| Dividends Paid | $ | (2,634.00) | $ | 10,059.00 | |
| **Ending Value** | $ | 50,059.00 | $ | 50,059.00 | **25.60%** |



Dividends Paid Performance Chart

# GIG

## THE GALEMMO INVESTMENT GROUP

2637 Erie Avenue, Suite 201 ▲ Cincinnati, Ohio 45208
Local: (513)924-0990 ▲ Fax: (513)924-0991 ▲ National Free: 1-877-265-7229

Funds shown on this statement on accumulation of accounts at Lieber and Wessman, Paine Webber, DLJ, and KeyBank; All accounts are SIPC Insured.

Steve W. Smith
6803 Salem Rd
Cincinnati, OH 45230

**Client Statement**

01/01/01-01/31/01

| | | Jan-01 | | Jan-01 To Date | YTD % Return |
|---|---|---|---|---|---|
| **Beginning Value** | $ | 49,558.00 | $ | 49,558.00 | |
| Net Deposit / Withdrawls | | | | | |
| Dividends Paid | $ | 4,460.00 | $ | 4,460.00 | |
| **Ending Value** | $ | 54,018.00 | $ | 54,018.00 | **9.00%** |





# THE GALEMMO INVESTMENT GROUP

2637 Erie Avenue, Suite 201 ▲ Cincinnati, Ohio 45208
Local: (513)924-0990 ▲ Fax: (513)924-0991 ▲ National Free: 1-877-265-7229

Funds shown on this statement an accumulation of accounts of Lieber and Weisman, Paine Webber, DLJ, and KeyBank. All accounts are SIPC insured.

Steve Smith
6803 Salem Rd.
Cincinnati, OH 45230

12/01/01-12/31/01

**Client Statement**

|  | Dec | Jan-01 To Date | YTD % Return |
|---|---|---|---|
| **Beginning Value** | $ 64,002.00 | $ 49,558.00 | |
| Net Deposit / Withdrawls | $ - | $ - | |
| Dividends Paid | $ (1,120) | $ 13,324 | |
| **Ending Value** | $ 62,882 | $ 62,882 | **26.88%** |



### Dividends Paid Performance Chart

- ☒ Jan-01 To Date
- ☒ Dec

**Monthly % Return**
-1.75%



## THE GALEMMO INVESTMENT GROUP

2637 Eric Avenue, Suite 201  ▲  Cincinnati, Ohio 45208
Local: (513)924-0990  ▲  Fax: (513)924-0991  ▲  National Free: 1-877-265-7229

Funds shown on this statement an accumulation of accounts at Lieber and Wessman, Paine Webber, DLJ, and KeyBank. All accounts are SIPC Insured.

Steve Smith
6803 Salem Rd.
Cincinnati, OH 45230

**Client Statement**

12/01/02-12/31/02

| | | Dec. | | Jan-02 To Date | YTD % Return |
|---|---|---|---|---|---|
| **Beginning Value** | $ | 71,670.00 | $ | 62,882.00 | |
| Net Deposit / Withdrawls | $ | - | $ | - | |
| Dividends Paid | $ | (2,587) | $ | 6,201 | |
| **Ending Value** | $ | 69,083 | $ | 69,083 | **9.83%** |



**Dividends Paid Performance Chart**

**Monthly % Return**

-3.61%

# THE GALEMMO INVESTMENT GROUP

Steve Smith
6803 Salem Rd.
Cincinnati, OH 45230

12/01/03-12/31/03

|  | | December | | Jan-03 To Date | YTD % Return |
|---|---|---|---|---|---|
| Beginning Value | $ | 77,303.00 | $ | 69,083.00 | |
| Net Deposit / Withdrawls | $ | - | $ | - | |
| Dividends Paid | $ | 1,082 | $ | 9,302 | |
| Ending Value | $ | 78,385 | $ | 78,385 | **13.46%** |



**Monthly % Return**
1.40%

2693  Madison Road  Cincinnati, Ohio  45208    Local: 513-924-0990    Fax: 513-924-0991

CONFIDENTIAL

# THE GALEMMO INVESTMENT GROUP

Steve Smith
6803 Salem Rd.
Cincinnati, OH 45230

12/1/04-12/31/04

| | December | Jan-04 To Date | YTD % Return |
|---|---|---|---|
| Beginning Value | $ 82,263.00 | $ 78,385.00 | |
| Net Deposit / Withdrawls | $ - | $ - | |
| Dividends Paid | $ 1,728 | $ 5,606 | |
| Ending Value | $ 83,991 | $ 83,991 | 7.15% |



Dividends Paid Performance Chart

- Jan-04 To Date
- December

**Monthly % Return**
2.10%

1716  Madison Road  Cincinnati, Ohio  45206    Local: 513-924-0990    Fax: 513-924-0991



# Queen City
## Hedge Fund LLC

1716 Madison Road • Cincinnati, Ohio 45206 • 513.924.0990 • 513.924.0991 fax

Steve Smith
6803 Salem Road
Cincinnati, OH 45230

12/01/05-12/31/05

Prepared from accounts without audit

|  | | December | | Jan 05 to date | YTD % Return |
|---|---|---|---|---|---|
| Beginning Value | $ | 92,246.00 | $ | 85,763.00 | 7.74% |
| Net Deposit / Withdrawls | $ | - | $ | - | |
| Dividends Paid | | -$775 | $ | 6,708 | |
| Ending Value | $ | 91,471 | $ | 92,471 | 7.74% |



Qrt. % Return

-0.84%

# Queen City
## Investment Funds
1716 Madison Road • Cincinnati, Ohio 45206

*Deposit 30K 11/9/0[?]*

STEVE SMITH
6803 SALEM ROAD
CINCINNATI, OH 45230-2917

513.924.0990
513.924.0991 Fax

Statement Period
12/01/706 - 12/31/706

Prepared from accounts without audit

| | December | YTD |
|---|---|---|
| Beginning Account Value | $ 160,705 | $ 92,471 |
| Net Deposit / Withdrawals | | 50,000 |
| Dividends Paid | $ 804 | $ 19,038 |
| Net Account Value | $ 161,509 | $ 161,509 |
| % Return | 0.50% | 9.47% |



Dividends Paid Performance Chart

STEVE SMITH-00206

# Queen City
## Investment Funds
1716 Madison Road • Cincinnati, Ohio 45206

*2007 YEAR END*

513.924.0990
513.924.099 fax

STEVE SMITH
6803 SALEM ROAD
CINCINNATI, OH 45230-2917

Statement Period
12/01/07-12/31/07

Prepared from accounts without audit

|  | December | YTD |
|---|---|---|
| Beginning Account Value | $ 197,291 | $ 161,509 |
| Net Deposit / Withdrawals | | $ - |
| Dividends Paid | $ 138 | $ 35,920 |
| Net Account Value | $ 197,428 | $ 197,429 |
| % Return | 0.07% | 20.21% |



**Dividends Paid Performance Chart**



# Queen City
## Investment Funds
1716 Madison Road • Cincinnati, Ohio 45206

513.924.0990
513.924.0991 fax

STEVE SMITH
6803 SALEM ROAD
CINCINNATI, OH 45230-2917

Statement Period
12/01/08 - 12/31/08

Prepared from accounts without audit

|  | December | YTD |
|---|---|---|
| Beginning Account Value | 222,331 | 197,429 |
| Net Deposit / Withdrawal |  |  |
| Dividends Paid | (2,068) | 22,834 |
| Net Account Value | 220,263 | 220,263 |
| % Return | 0.23% | 4.29% |



**Dividends Paid Performance Chart**



# Queen City
## Investment Funds
1716 Madison Road · Cincinnati, Ohio 45206

STEVE SMITH
6803 SALEM ROAD
CINCINNATI, OH 45230-2917

513.924.0990
513.924.0991 fax

Statement Period:
12/1/09–12/31/09

Prepared from accounts without audit

|  | December | YTD |
|---|---|---|
| Beginning Account Value | $ 302,125 | $ 220,263 |
| Net Deposit / Withdrawals |  |  |
| Dividends Paid | (906) | 80,955 |
| Net Account Value | $ 301,219 | $ 301,219 |
| % Return | (0.30%) | 32.35% |

### Dividends Paid Performance Chart





# Queen City
## Investment Funds
1716 Madison Road • Cincinnati, Ohio 45206

STEVE SMITH
6803 SALEM ROAD
CINCINNATI, OH 45230-2917

513.924.0990
513.924.0991 fax

Statement Period:
11/1/10-11/30/10

Prepared from accounts without audit

|  | November | YTD |
|---|---|---|
| Beginning Account Value | $ 368,580 | $ 301,219 |
| Net Deposit / Withdrawals | $ | $ (55,000) |
| Dividends Paid | $ 2,469.49 | $ 124,830.49 |
| Net Account Value | $ 371,049.49 | $ 371,049.49 |
| % Return | 0.67% | 37.24% |



**Dividends Paid Performance Chart**



# Queen City
## Investment Funds
1716 Madison Road • Cincinnati, Ohio 45206

STEVE SMITH
680 NORDYKE ROAD
CINCINNATI, OH 45255-4639

513.924.0990
513.924.0991 fax

Statement Period:
12/1/11-12/31/11

Prepared from accounts without audit

| | December | YTD |
|---|---|---|
| Beginning Account Value | $ 441,466 | $ 367,799 |
| Net Deposit / Withdrawals | $ | $ (40,000) |
| Dividends Paid | $ 8,387.85 | $ 122,054.85 |
| Net Account Value | $ 449,853.85 | $ 449,853.85 |
| % Return | 1.90% | 30.12% |



Dividends Paid Performance Chart



# Queen City
## Investment Funds
1716 Madison Road · Cincinnati, Ohio 45206

STEVE SMITH
680 NORDYKE ROAD
CINCINNATI, OH 45255-4639

*December 2012*

513.924.0990
513.924.0991 fax

Statement Period:
12/01/12-12/31/12

Prepared from accounts without audit

| | December | YTD |
|---|---|---|
| Beginning Account Value | $ 209,408 | $ 449,854 |
| Net Deposit / Withdrawals | | (360,000) |
| Dividends Paid | $ (1,465.86) | $ 118,088.14 |
| Net Account Value | $ 207,942.14 | $ 207,942.14 |
| % Return | (0.70%) | 32.74% |

**Dividends Paid Performance Chart**



## Queen City
### Investment Funds
1716 Madison Road • Cincinnati, Ohio 45206

SHELBY SMITH
680 NORDYKE ROAD
CINCINNATI, OH 45255-4639

513.924.0990
513.924.0991 fax

Statement Period:
4/1/13-4/30/13

Prepared from accounts without audit

|  | April | YTD |
|---|---|---|
| Beginning Account Value | $ 86,245 | $ 77,090 |
| Net Deposit / Withdrawals | $ | $ |
| Dividends Paid | $ (689.96) | $ 8,465.04 |
| Net Account Value | $ 85,555.04 | $ 85,555.04 |
| % Return | (0.80%) | 10.70% |



Dividends Paid Performance Chart

QFC LLC
1716 MADISON RD.
CINCINNATI, OH 45206-1817

13-1/420

1883

DATE 2/23/12

PAY TO THE
ORDER OF _Steve Smith_          $ 435—

_four hundred thirty five_                    DOLLARS

**bank.** All of US serving you®

MEMO _fee refund_

⑈0420000⑈3⑈ 130⑈1532467 0⑈ 1883

HUNTINGTON  COLUMBUS,OH
7 EASTON OVAL        0044115126<
022917405 02-28-12
06 022267405 1486 06 0221174405

>0441115126<
02-28-12
0221174405

Marit
20120228 009192856660 435.00
20130802204315 130115324670

Marit Johnson
BC-MN-H21P

QUEEN CITY HOLDINGS LLC
1716 MADISON RD.
CINCINNATI, OH 45206-1817

13-1/420
13011294848

1288

DATE 12/31/09

PAY TO THE
ORDER OF  Steve Smith                                    $ 250.00

two hundred & fifty ——————————— DOLLARS

**usbank.**
Five Star Service Guaranteed    usbank.com

MEMO account fees

⑈042000013⑈ 13011294848⑈ 1288



Marit
20091222 009190746796 250.00
20130802201307 130112948448

Marit Johnson
BC-MN-H21P

QFC LLC
1716 MADISON RD.
CINCINNATI, OH  45206-1817

13-1/420

1031

DATE _May 18, 2010_

PAY TO THE
ORDER OF _Steve Smith_                    $ _30,000°°_

_Thirty thousand and_ °°/100 _—_                    DOLLARS

**us bank.**
Five Star Service Guaranteed
usbank.com

MEMO _Withdraw_

⑆042000013⑆  130115324670⑈ 1031



>044115126<
HUNTINGTON   COLUMBUS, OH
7 EASTON OVAL      >044115126<
012081276  05-18-10
06 012081276  1442 06 012081276.

>044115126<
05-18-10

012081276

Steve Smith
012081276

Marit
20100518 009190327902 30000.00
20130802204315 130115324670

Marit Johnson
BC-MN-H21P

QFC LLC
1716 MADISON RD.
CINCINNATI, OH 45206-1817

13-1/420

2173

DATE 7/11/12

PAY TO THE
ORDER OF _Stuy Smith_                    $ 5000 —

_five thousand_                                   00/100 DOLLARS

**usbank.**  All of us serving you

MEMO _Refund_

⑆04 20000 13⑆  1301153 24670⑈ 2173

HUNTINGTON   COLUMBUS,OH        >0441115126<
7 EASTON OVAL        )0441115126<      07-11-12
023087667  07-11-12
06  023087667  3293  06  023087667        023087667

Marit
20120711  009195377280  5000.00
20130802204315  130115324670

Marit Johnson
BC-MN-H21P

STEVEN W. SMITH
6803 SALEM RD.
CINCINNATI, OH  45230-2917

13-1542/420
03658361839

1005

Date 11/9/06

PAY TO THE ORDER OF  Queen City Holdings                    $ 50,000

FIFTY THOUSAND AND 00/100                                    DOLLARS

MONEY
MARKET
ACCOUNT

The Huntington National Bank
Cincinnati, Ohio 45202

Huntington
Banks

Steven W. Smith

#Home

⑆042015422⑆ 03658361839⑈01005 ⑈0005000000⑆

FOR DEPOSIT ONLY
13010433120

DO NOT WRITE, STAMP OR SIGN BELOW THIS LINE
* RESERVED FOR FINANCIAL INSTITUTION USE *

Marit
20061109 005121967461 50000.00
20130802232998 12345678

Marit Johnson
BC-MN-H21P

BNY MELLON TRUST OF DELAWARE
NEWARK, DELAWARE

# National Financial Services LLC
200 Liberty Street, One World Financial Center
New York, NY 10281

NO. 905558314

BT-35/311

October 08, 2008

PAY *Fifty Eight Thousand Two Hundred Sixty Seven Dollars
and 40 Cents*

EXACTLY
*$58,267.40 *

Not Valid After 90 Days

0000432

TO
THE
ORDER
OF

STEVEN W SMITH
6803 SALEM RD
CINCINNATI OH 45230

National Financial Services LLC

AUTHORIZED SIGNATURES

⑈905558314⑈ ⑆031100351⑆ ⑈0300974219⑈        ⑈00058 26 740⑈

THE ORIGINAL DOCUMENT HAS A WHITE REFLECTIVE WATERMARK ON THE BACK.        HOLD AT AN ANGLE TO SEE THE MARK WHEN CHECKING THE ENDORSEMENTS.

7786254

76364 175 97  7 10162808
00130104333120 US BANKRA
P0910000224 ST PAUL, MN
472240343

U U J  5 5 1 4 6

ENDORSE
X Steve W Smith
Pay to the order of
Queen City Holdings

DO NOT WRITE, STAMP OR SIGN BELOW THIS LINE
DEPOSITORY BANK ENDORSEMENT

Marit
20081016 004722403436 58267.40
20130802232998 12345678

Marit Johnson
BC-MN-H21P

# Exhibit D

TELEPHONE
513-241-6400

CUMMINS & BROWN, LLC
ATTORNEYS AND COUNSELORS AT LAW
SCRIPPS CENTER
312 WALNUT STREET, SUITE 1000
CINCINNATI, OHIO 45202

FACSIMILE
513-241-6464

December 9, 2014

Steven Smith
680 Nordyke
Cincinnati, OH  45255

Re:    *Joseph G. Capannari, et al. v. Glen A. Galemmo, et al.*
        Case No. 1:13CV883

Dear Mr. Smith:

    Enclosed please find the Request for Admissions served today in the above-referenced action.

Very truly yours,

*Phyllis Brown*

Phyllis E. Brown

PEB:blc
Enclosure

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION (CINCINNATI)

| | | |
|---|---|---|
| JOHN G. CAPANNARI, et al., | : | CIVIL ACTION NO. 1:13CV883 |
| | : | |
| *Plaintiffs,* | : | Judge Michael R. Barrett |
| | : | |
| vs. | : | Magistrate Judge Stephanie K. Bowman |
| | : | |
| GLEN A. GALEMMO, et al. | : | PLAINTIFFS' FIRST REQUEST FOR |
| | : | ADMISSIONS TO DEFENDANT STEVEN |
| *Defendants.* | : | SMITH |
| | : | |

 Pursuant to Rules 36 of the Federal Rules of Civil Procedure (the "FRCP"), John G. Capannari, et al., (collectively "Plaintiffs"), by counsel, requests Steven Smith ("Smith") to answer, in writing and under oath, each of the following Requests for Admissions on or before the thirtieth (30th) day after service.

## INSTRUCTIONS

1. The answer shall specifically admit or deny each Request for Admission or, if any request cannot be admitted or denied, set forth in detail the reasons for Smith's inability to answer that request, whatever information or knowledge Smith or his counsel has concerning the unanswered portion, and the efforts made by Smith or his counsel to supply a complete answer.

2. A denial must fairly respond to the substance of the matter.

3. If you admit or deny only part of an answer, the answer must specify the part admitted and the part denied.

4.    In each case where a lack of information or knowledge is asserted as a reason for failure to admit or deny a Request for Admission, state in detail the information or knowledge that is unavailable and the efforts made by Smith to supply an answer.

5.    These Requests for Admission are deemed to be continuing in nature and require supplemental answers in accordance with the requirements of Rule 26(E) of the Ohio Rules of Civil Procedure.

6.    Except when express reference is made to another paragraph, each Request for Admission shall be construed independently and not with reference to any other Request for Admission for the purpose of limitation.

7.    Separate and complete responses are required for each Request for Admission.

8.    If you object to a portion or aspect of a Request for Admission, state the grounds for your objection with specificity and answer the remainder of the Request for Admission. If any information is withheld based on a claim of privilege, set forth in writing the basis for the claim of privilege.

9.    If you deny any Request for Admission or a portion thereof, provide all documents on which you base your denial or which supports your denial.

## DEFINITIONS

1.    The singular of any word shall include the plural and the plural of any word shall include the singular.

2.    "And" and "or" shall be construed disjunctively or conjunctively as necessary in order to bring within the scope of the request all responses which might otherwise be construed to be outside its scope.

3.    "Any" and "all" shall be construed to include "each" and "each and every."

4.     "Communications" means any and all of the following: writings, oral communications, conversations by telephone, meetings, and any contact, oral or written, formal or informal, at any time or place, and under any circumstances whatsoever in which information of any nature was transmitted or exchanged in any form.

5.     "Correspondence" means letters, notes, and emails, both sent and unsent, as well as text messages and any other form of written communication.

6.     "Document(s)" means all materials within the full scope of Rule 34 of the Rules, including but not limited to: all writings and recordings, including the originals and all non-identical copies, whether different from the original by reason of any notation made on such copies or otherwise (including but without limitation to, email and attachments, correspondence, memoranda, notes, diaries, minutes, statistics, letters, telegrams, minutes, contracts, reports, studies, checks, statements, tags, labels, invoices, brochures, periodicals, telegrams, receipts, returns, summaries, pamphlets, books, interoffice and intraoffice communications, offers, notations of any sort of conversations, working papers, training manuals and/or materials, applications, permits, file wrappers, indices, telephone calls, meetings or printouts, teletypes, telefax, invoices, worksheets, and all drafts, alterations, modifications, changes and amendments of any of the foregoing; graphic or aural representations of any type, including without limitation, photographs, charts, microfiche, microfilm, videotape, recordings, motion pictures, plans, drawing, surveys; and electronic, mechanical, magnetic, optical or electric records or representations of any type (including without limitation, computer files and programs, tapes, cassettes, discs, recordings), including metadata.

7.     "Financial Records" includes all books of account, source documents, accounting records (including journals and ledgers), bank statements, cancelled checks, check registers, records of

bank wires, branch bank withdrawals, tax returns, and all documents reflecting ownership and transfer of interests in the Galemmo Entities including, but not limited to, member interests and stock ownership in any of the Galemmo Entities.

8.     "Investors" includes Plaintiffs in the above-captioned case and all persons and entities that invested funds with Glen Galemmo and the Galemmo Entities, as defined below.

9.     "Galemmo Entities" includes all entities in which Defendant Glen Galemmo, Defendant Kristine Galemmo and/or members of his/her immediate family (including those related to them by marriage) had, either directly or indirectly, possession or control of, ownership in or any economic interest in including but not limited to the following entities:  Queen City Investment Fund II, LLC, Queen City Advisors, LLC, Galemmo Investment Group, Queen City Investment Funds, Queen City Investments, Queen City Hedge Fund, LLC, QC Power Strategies Fund II, LLC, QC Power Strategies Fund Sweep Account, LLC, QC Power Strategies Fund, LLC, Queen City Holdings, LLC, Sentinel Property Holdings, LLC, Glen Rock, LLC, Sentinel Strategy Fund, LLC, QFC, LLC, Midwest Hoops at Sportsplus, LLC, Cincinnati Royals, Inc., Queen City Hedge Fund, LLC, PSIF, LLC, Rugged Power Management, LLC and Rugged Power Investment, LLC.

10.     "Persons" means natural persons, corporations, firms, companies, partnerships, unincorporated associations, governmental or public agencies, joint ventures, and all other entities.

11.     "Relating to" means to refer to, reflect upon, concern, pertain to or in any manner be connected with the matter discussed during the Relevant Time Period.

12.     Unless otherwise specified, "Relevant Time Period" means from January 1, 2005 to the present.

# REQUESTS FOR ADMISSIONS

## Request for Admission No. 1

Admit that Smith was an investor in the Galemmo Entities.

## Request for Admission No. 2

Admit that Smith invested and/or loaned a total amount of $156,000 in the Galemmo Entities.  If you deny this Request, please provide the information requested in Instruction No. 9.

## Request for Admission No. 3

Admit that Smith withdrew a total amount of approximately $470,000 from the Galemmo Entities in return for his investments and/or loans.

## Request for Admission No. 4

Admit that Smith received more money from the Galemmo Entities than he invested and or loaned the Galemmo Entities.

## Request for Admission No. 5

Admit that Smith provided no services of reasonably equivalent value to the Galemmo Entities.

Respectfully submitted,

s/ Phyllis E. Brown
James R. Cummins (0000861)
Phyllis E. Brown (0037334)
Adam S Brown (0078803)
Lauren M. Solimine (0091311)
CUMMINS & BROWN LLC
312 Walnut Street, Suite 1000
Cincinnati, OH 45202
(513) 241-6400 – Telephone
(513) 241-6464 – Facsimile
*jcummins@cumminsbrownlaw.com*
*pbrown@cumminsbrownlaw.com*
*abrown@cumminsbrownlaw.com*
*lsolimine@cumminsbrownlaw.com*

s/ Richard S. Wayne
Richard S. Wayne (0022390)
Brett M. Renzenbrink (0086723)
STRAUSS TROY CO., LPA
The Federal Reserve Building
150 East Fourth Street
Cincinnati, Ohio 45202-4018
(513) 621-2120 – Telephone
(513) 629-9426 – Facsimile
*rswayne@strausstroy.com*
*bmrezenbrink@strausstroy.com*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was served via electronic mail or by United States Postal Service on this _9th_ day of December 2014, upon the following:

Russell S. Sayre
Taft Stettinius & Hollister LLP
425 Walnut Street, Suite 1800
Cincinnati, OH 45202
513-357-9695
sayre@taftlaw.com
poshea@taftlaw.com
    *Attorneys for:*
    DEFENDANT CHARLES G. SIMON

James E. Burke
Anthony Verticchio
Keating Muething & Klekamp PLL
One East Fourth Street, Suite 1400
Cincinnati, OH 45202
jburke@kmklaw.com
tverticchio@kmklaw.com
    *Attorney for:*
    DEFENDANT RUGGED POWER INVESTMENTS LLC
    DEFENDANT RUGGED POWER MANAGEMENT LLC
    JAMES HULL
    JOSHUA LOGSDON
    LEONARD MORRIS
    NICHOLAS ROSATI
    RICHARD ECKES
    RICHARD MORRIS
    ROB MORRIS
    SEBASTIAN LOGSDON
    WILLIAM COX

Benjamin G. Dusing
Angela Hayden
Jason Kuhlman
The Law Offices of Benjamin G. Dusing, PLLC
50 East RiverCenter Blvd., Suite 820
Covington, KY 41011
bdusing@bgdlaw.com
ahayden@bgdlaw.com
jkuhlman@bgdlaw.com
    *Attorney for:*
    WILEY B. KYLES
    W. BERNARD KYLES & CO., INC.
    KRISTINE GALEMMO

Bradley D. McPeek
Lindhorst & Dreidame
312 Walnut Street, Suite 3100
Cincinnati, OH 45202
bmcpeek@lindlorstlaw.com
     *Attorney for:*
     JAMES PERRY TRUST
     ASL PROPERTIES, INC.

Pamela K. Ginsburg
Richard T. Hamilton, Jr.
Donald J. Mooney
Brad A. Sobolewski
Ulmer & Berne LLP
2800 Cincinnati Commerce Center
600 Vine Street
Cincinnati, OH 45202
pginsburg@ulmer.com
rhamilton@ulmer.com
dmooney@ulmer.com
bsobolewski@ulmer.com
     *Attorney for:*
     LUTHER LYNN SHELBY

Charles E. Reynolds
Brian P. O'Connor
Allison S. King
Santen & Hughes
600 Vine Street, Suite 2700
Cincinnati, OH 45202
cer@santen-hughes.com
bpo@santen-hughes.com
ask@santen-huges.com
     *Attorney for:*
     CYNTHIA KHOO-ROBINSON
     JACK TENKMAN
     CHARLES LYTLE

William Morris Bristol
Gary F. Franke Co., L.P.A.
120 East 4th Street, Suite 1040
Cincinnati, OH 45202
wmb@garyfrankelaw.com
     *Attorney for:*
     Allison Bristol
     William Bristol

Ryan Edward Blair
Michael A. Attanasio
Cooley LLP
4401 Eastgate Mall
San Diego, CA 92121
mattanasio@cooley.com
rblair@cooley.com
    *Attorney for:*
    LEONARD MORRIS
    RICHARD MORRIS
    ROB MORRIS

Matthew J. Horwitz
Brandi M. Stewart
United States Attorney's Office for the Southern District
201 East 4th Street, Suite 400
Cincinnati, OH 45202
Matthew.Horwitz@usdoj.gov
    *Attorney for:*
    UNITED STATES OF AMERICA

Donald J. Ireland
Erin Rhinehart
Faruki Ireland & Cox PLL
500 Courthouse Plaza, SW
10 N. Ludlow Street
Dayton, OH 45402
djireland@ficlaw.com
erhinehart@ficlaw.com
    *Attorney for:*
    ANDREW MILLER
    IRA STEIN
    LESLIE STEIN

Judd R. Uhl
Katherine L. Kennedy
Mannion & Gray
909 Wright's Summit Parkway, Suite 230
Ft. Wright, KY 41011
kkennedy@manniongray.com
juhl@manniongray.com
    *Attorney for:*
    L.W. CAPITAL CORPORATION
    LARRY WEIN

Christopher D. Wiest
25 Town Center Blvd., Suite 104
Crestview Hills, KY 41017
chris@wiestlaw.com
*Attorney for:*
CHERYL A. GALEMMO
JOSEPH A. GALEMMO, SR.
JOSEPH A. GALEMMO, JR.
MARY ANN GALEMMO

Steven Smith
680 Nordyke Road
Cincinnati, OH 45255
*Pro Se*

s/ Phyllis E. Brown
Phyllis E. Brown

38679

# Exhibit E

TELEPHONE
513-241-6400

FACSIMILE
513-241-6464

April 27, 2015

**CERTIFIED MAIL –**
**RETURN RECEIPT REQUESTED**

Steven Smith
680 Nordyke Road
Cincinnati, OH 45255

   Re: *Joseph G. Capannari, et al. v. Glen A. Galemmo, et al.*
     Case No. 1:13CV883

Dear Mr. Smith:

  On December 9, 2014, the attached Requests for Admission were served on you in the above-captioned case. On April 2, 2015, we reminded you that you had failed to respond and that under Fed.R.Civ.P.36, a request for admission is deemed admitted unless you respond within 30 days after service, as designated in the request. You failed to respond, despite our warning that we would move to have the Requests for Admission deemed admitted.

  I am again attaching the Requests for Admissions with another demand for you to respond. If you fail to respond within one week of the date of this letter, we intend to move for summary judgment.

       Very truly yours,

       Phyllis Brown

       Phyllis E. Brown

PEB:blc
Enclosure
39227

English        Customer Service        USPS Mobile                                        Register / Sign In

**USPS.COM**

# USPS Tracking™



**Customer Service ›**
Have questions? We're here to help.



**Get Easy Tracking Updates ›**
Sign up for My USPS.com.

Tracking Number: 70122920000069505983

## Product & Tracking Information

Postal Product:                Features:
                               Certified Mail™

| DATE & TIME | STATUS OF ITEM | LOCATION |
| --- | --- | --- |
| May 4, 2015 , 12:06 pm | Delivered | CINCINNATI, OH 45202 |

Your item was delivered at 12:06 pm on May 4, 2015 in CINCINNATI, OH 45202.

| | | |
| --- | --- | --- |
| May 2, 2015 , 5:18 am | Departed USPS Facility | CINCINNATI, OH 45234 |
| May 1, 2015 , 9:37 pm | Arrived at USPS Facility | CINCINNATI, OH 45234 |
| May 1, 2015 , 12:38 am | Departed USPS Facility | DETROIT, MI 48233 |
| April 30, 2015 , 11:11 pm | Arrived at USPS Facility | DETROIT, MI 48233 |
| April 28, 2015 , 6:37 pm | Forwarded | CINCINNATI, OH |

## Available Actions

Text Updates

Email Updates

Return Receipt After Mailing

## Track Another Package

Tracking (or receipt) number

[                                    ]                Track It

## Manage Incoming Packages

Track all your packages from a dashboard.
No tracking numbers necessary.

**Sign up for My USPS.com ›**



HELPFUL LINKS          ON ABOUT.USPS.COM          OTHER USPS SITES          LEGAL INFORMATION
Contact Us             About USPS Home            Business Customer Gateway  Privacy Policy
Site Index             Newsroom                   Postal Inspectors          Terms of Use
FAQs                   USPS Service Updates       Inspector General          FOIA
                       Forms & Publications       Postal Explorer            No FEAR Act EEO Data
                       Government Services        National Postal Museum
                       Careers                    Resources for Developers

Copyright © 2015 USPS. All Rights Reserved.

# Exhibit F

# CUMMINS & BROWN, LLC
## ATTORNEYS AND COUNSELORS AT LAW
### SCRIPPS CENTER
312 WALNUT STREET, SUITE 1000
CINCINNATI, OHIO 45202

May 5, 2015

Steven Smith
6803 Salem Road
Cincinnati, OH  45230-2917

Re:     *Joseph G. Capannari, et al. v. Glen A. Galemmo, et al.*
        Case No. 1:13CV883

Dear Mr. Smith:

On December 9, 2014, the attached Requests for Admission were served on you in the above-captioned case.  On April 2, 2015, we reminded you that you had failed to respond and that under Fed.R.Civ.P.36, a request for admission is deemed admitted unless you respond within 30 days after service, as designated in the request.  You failed to respond, despite our warning that we would move to have the Requests for Admission deemed admitted.

I am again attaching the Requests for Admissions with another demand for you to respond.  If you fail to respond within one week of the date of this letter, we intend to move for summary judgment.

Very truly yours,

*Phyllis Brown*

Phyllis E. Brown

PEB:blc
Enclosure
39246